12/30/05
Keycite ✓
(Okay)

Not Reported in F.Supp.2d, 2002 WL 31474189 (D.Or.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.
WAI CHINN, individually and on behalf of all those similarly situated, Plaintiffs,
v.
Robert A. BELFER, Norman P. Blake, Jr., Richard Causey, Ronnie C. Chan, John H. Duncan, Joe E. Foy, Andrew S. Fastow, Wendy L. Gramm, Ken L. Harrison, Robert Jaedicke, Ken L. Lay, Charles A. Lemaistre, Rebecca Mark-Jusbasche, John Mendelsohn, Jerome J. Meyer, Paulo V. Ferraz Pereira, Frank Savage, Jeffrey K. Skilling, John A. Urquhart, Charls Walker, John Wakeham, Bruce Willison, Herbert S. Winokur, Jr., LJM Cayman LP, LJM2 Cayman Co-Investment LP, Chewco Investments L.P., Joint Energy Development Investments Limited Partnership, and Arthur Andersen LLP, Defendants.
No. Civ.02-00131-ST.
June 19, 2002.

FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate J.

*INTRODUCTION*

***1** On January 9, 2002, plaintiffs commenced this class action in Multnomah County Circuit Court against former officers and directors of Enron Corporation ("Enron"), Enron's outside auditing firm, and several privately held entities relating to Enron. The Complaint alleges claims under Oregon law for negligent misrepresentation, common law fraud, and breach of fiduciary duty.

On February 1, 2002, defendants timely removed this action from state court pursuant to 28 USC §§ 1441 and 1446 and the Securities Litigation Uniform Standards Act of 1998, Pub L No 105-353, 112 Stat 3227 ("SLUSA"), asserting that plaintiffs' Complaint is removable and should be dismissed pursuant to 15 USC § 77p(c). SLUSA mandates removal and automatic dismissal of any (1) "covered class action" that (2) purports to be based on state law (3) alleging a misrepresentation or omission of material fact "in connection with" the purchase or sale of (4) a "covered security." 15 USC § 77p(b) & (c). Plaintiffs then filed a Motion to Remand (docket # 6), arguing that the Complaint does not allege reliance on misrepresentations or omissions made "in connection with the purchase or sale of a covered security" as required for removal under SLUSA, 15 USC § 77p(b)(2).

After removal, Arthur Andersen LLP ("Andersen") named this action in a Notice of Potential Tag-Along actions filed on February 25, 2002 with the Judicial Panel on Multidistrict Litigation (the "MDL Panel"). The MDL Panel was then considering a motion to consolidate over 50 cases pending in several federal districts arising out of Enron's collapse pursuant to 28 USC § 1407. Some of those cases also were removed from state court based on SLUSA with pending motions to remand.

Shortly thereafter, on February 27, 2002, Enron filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay in this case. On March 1, 2002, this court issued an Order (docket # 13) recognizing the automatic stay. Three weeks later, plaintiffs filed a Motion to Vacate the Automatic Stay (docket # 14). Andersen then filed a Cross-Motion to Stay Proceedings (docket # 22), asking that the proceedings in this case, including the motion to remand, be stayed pending a determination by the MDL Panel on the motion to consolidate the myriad Enron-related cases.

On April 16, 2002 the MDL Panel issued an order consolidating 54 Enron-related cases from several federal districts for coordinated pretrial proceedings in the Southern District of Texas. *See* Amended Affidavit of Jay W. Beattie In Support of Andersen's Reply In Support of Cross-Motion to Stay Proceedings, Ex A. The MDL Panel further noted that there are over 40 potential tag-along actions,

ATTACHMENT/EXHIBIT 18
PAGE 1 OF 9

including this action, and that such actions will be subject to conditional transfer orders pursuant to Rule 7.4 of the Rules of Procedure of the MDL Panel, 28 USC § 1407 ("Panel Rules").

On April 22, 2002, Enron filed in the Bankruptcy Court a Motion for a Global Order to enforce the automatic stay under 11 USC § 362(a) to prevent plaintiffs, including plaintiffs in this case, from prosecuting actions which constitute property of the bankruptcy estate. Affidavit of Paul T. Fortino In Support of Defendants' Joint Opposition to Motion to Remand and Renewed Cross-Motion to Stay, Ex B. On the same day, this court lifted the automatic stay and directed the parties to complete briefing on plaintiffs' motion to remand. This court also reserved decision on Andersen's cross-motion to stay.

***2** On May 13, 2002, this court held another hearing and questioned whether the Complaint alleged a theoretical federal securities fraud claim because the defined class included shareholders who had purchased Enron stock subsequent to, and in reliance on, some of the alleged misrepresentations and omissions. Transcript of Proceedings of May 13, 2002 (docket # 41) ("May Transcript"), pp. 5-7, 9-10, 18. Plaintiffs argued that the Complaint alleged no such claims, and alternatively made an oral motion to amend in the event such a claim were found in the initial Complaint. This court then questioned the propriety of a remand to state court following a clarifying amendment and ordered briefing on that issue.

On May 24, 2002, the MDL Panel issued a Conditional Transfer Order transferring 17 tag-along actions, including this action, to the Southern District of Texas for the same reasons stated in the its initial order establishing the multidistrict proceedings relating to the Enron litigation. Affidavit of Carl R. Neil In Opposition to Plaintiffs' Supplemental Memorandum In Support of Motion to Remand, Ex A. Plaintiffs filed a timely Notice of Opposition to the Conditional Transfer Order. As a result, the Conditional Transfer Order is stayed and this court's jurisdiction continues until further order of the MDL Panel. Panel Rule 1.5; [FN1] *General Elec. Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir1979).

FN1. Panel Rule 1.5 provides that: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 USC § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."

The narrow issues currently before this court are relatively straightforward. They are: (1) whether an amendment to the Complaint is necessary to clarify that plaintiffs are not pursuing claims by individuals who purchased shares of Enron stock between April 11, 1997, and October 16, 1998; and (2) whether this court has subject matter jurisdiction over the claims in plaintiffs' Complaint. This court finds that both of these questions should be answered in the negative, and therefore recommends that plaintiffs' pending Motion to Remand (docket # 6) be granted; Andersen's Cross-Motion for a Stay (docket # 22) be denied; plaintiffs' oral motion to amend be denied as moot; and this action be remanded to Multnomah County Circuit Court.

*ANALYSIS*

I. *Plaintiffs' Motion to Remand and Defendants' Cross-Motion to Stay*

A. Meyers *Methodology*

As noted above, the parties have filed competing motions to remand and to stay. These motions pose the inevitable tension between plaintiffs who wish to remain in state court and defendants who contend that they are entitled to be in federal court. Superimposed over that tension is the fact that this case is subject to a Conditional Transfer Order in MDL litigation. Defendants urge this court to stay its hand and let the MDL Panel address the motion to remand in order to avoid conflicting jurisdictional decisions from the various federal district courts in which they have been named as defendants. Plaintiffs insist that this court has no jurisdiction, that they are entitled to an immediate remand to state court, and that they should not be forced into the quagmire of MDL litigation in a distant court where they may have to wait months for a decision on the remand issue.

***3** District courts are divided as to whether to address the competing remand and stay motions

ATTACHMENT/EXHIBIT 18
PAGE 2 OF 9

together or separately, and if separately, in what order, and whether to defer consideration of the motions to the MDL Panel. *Meyers v. Bayer AG,* 143 F Supp2d 1044, 1047-48 (ED Wis 2001) (collecting cases). During the first hearing in this matter, this court advised the parties that to decide these motions, it would follow the analytical framework articulated in *Meyers.* Nothing filed or argued in this case since that time persuades this court to alter its course in that regard.

*Meyers* outlines a sensible three step methodology for deciding competing motions to remand and stay in cases involving pending transfer motions or conditional transfer orders in multidistrict litigation:

[A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.

If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding.

* * *

Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay. *Id* at 1049.

Despite the quantity of briefing submitted in this case, this court concludes that the jurisdictional issue is not factually or legally difficult and defendants have failed to show that SLUSA applies. Accordingly, this case should be remanded to Multnomah County Circuit Court.

B. *Preliminary Assessment of the Jurisdictional Issue*

As noted above, SLUSA mandates removal and automatic dismissal of any (1) "covered class action" that (2) purports to be based on state law (3) alleging a misrepresentation or omission of material fact "in connection with" the purchase or sale of (4) a "covered security." 15 USC § 77p(b) & (c). There is no dispute that this case is a class action purporting to be based on state law and alleging misrepresentations or omissions regarding covered securities. Thus, the narrow jurisdictional issue is whether plaintiffs' Complaint alleges misrepresentations or omissions "in connection with the purchase or sale" of Enron securities. If so, SLUSA applies and this case was properly removed and should be dismissed.

As defendants acknowledged at oral argument, if the putative class includes only those individuals who purchased Enron securities *prior* to the first alleged misrepresentations or omissions on April 11, 1997, then SLUSA does not apply. The class is then limited strictly to the holders of securities who have "holder claims" that belong in state court. *See* May Transcript, pp. 10-11.

***4** Supreme Court precedent clearly contemplates that state law may provide a remedy for *holders* of securities separate and apart from any remedy available to *purchasers* or *sellers.* Although "actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material" have no claim under the 1934 Act, the Court stated that "this disadvantage is attenuated to the extent that remedies are available to nonpurchasers and nonsellers under state law." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 738-39 n9 (1975). A number of states have upheld the rights of holders and nonpurchasers to seek relief in state court for misrepresentations. *See, eg, Malone v. Brincat,* 722 A.2d 5 (Del Supr 1998). SLUSA, enacted some 23 years after *Blue Chips Stamps* was decided, mandates removal only for those class actions alleging a misrepresentation or omission of material fact "in connection with" the purchase or sale of a covered security. 15 USC § 77p(b) & (c). Accordingly, several courts have remanded securities class actions alleging "holder claims" for failure to satisfy SLUSA's "in connection with" requirement. *Green v. Ameritrade, Inc.,* 279 F3d 590 (8th Cir2002); *Shaev v. Claflin,* 2001 WL 548567 (ND Cal 2001); *Gutierrez v. Deloitte & Touche, LLP,* 147 F Supp2d 584 (WD Tex 2001); *Gordon v. Buntrock,* 2000 WL 556763 (ND Ill 2000); *Lalondriz v. USA Networks, Inc.,* 54 FSupp2d 352 (SDNY 1999).

The voluminous record already generated in this case reveals that the motion to remand hinges upon the interpretation given the first two sentences of plaintiffs' Complaint, which allege as follows:

This is a class action pursuant to ORCP 32A alleging state law claims on behalf of all persons who held securities of Enron Corporation ("Enron" or "the Company") prior to October 16, 1998 and continued

ATTACHMENT/EXHIBIT 18
PAGE 3 OF 9

to hold Enron securities through November 27, 2001 ("the Class Period"). This class action specifically excludes claims based upon the purchase or sale of Enron securities.

Complaint, ¶ 1.

Pointing to alleged misrepresentations and material omissions occurring from April 11, 1997, to October 13, 1998 (Complaint, ¶¶ 52-64), defendants strenuously argue that the putative class, which consists of "all persons who held securities of Enron ··· *prior to October 16, 1998,"* necessarily includes a sub-class of individuals who not only held Enron securities, but also *purchased* Enron securities *after the first alleged misrepresentation on April 11, 1997.* Joint Notice of Removal, p. 5. Because this potential sub-class would have *purchased* their Enron securities at a price which, according to plaintiffs' substantive allegations (Complaint, ¶¶ 52-62), was artificially inflated by reason of defendants' alleged misstatements or omissions, defendants assert that plaintiffs' Complaint necessarily includes claims subject to SLUSA. For the reasons that follow, this court disagrees.

***5** First, the second sentence of the Complaint is clear that plaintiffs allege no claim based upon a purchase or sale: "This class action specifically excludes claims based upon the purchase or sale of Enron securities." Complaint, ¶ 1. While defendants posit that the class may include plaintiffs who purchased Enron securities after April 11, 1997, but before October 16, 1998, this second sentence effectively excludes the possibility of any potential claims for purchases post-dating the first alleged misrepresentation. This express disavowal of any claims based on a "purchase or sale" is not legally or factually difficult, and is the only sentence in the Complaint which references a "purchase" or "sale." The subsequent allegations regarding the historical beginnings of defendants' alleged fraud merely provide background facts and information and do not refer to any purchase or sale.

Plaintiffs explain that they did not specifically define the class to exclude plaintiffs who purchased Enron securities after April 11, 1997, because any such claim is clearly barred. Any claim based on a purchase must be brought within the three year statute of limitations. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350 (1991). Plaintiffs limit the class to individuals who held shares prior to *October 16, 1998,* which is more than three years before the first revelation of the underlying fraud. The statute of limitations bars any putative class members from pursuing any claims premised upon a purchase of Enron securities.

In any event, plaintiffs' express exclusion of a claim based upon a purchase or sale of securities is sufficient to eliminate the theoretical possibility of a claim by a holder who purchased during the period of the alleged misrepresentations. In that respect, this case is distinguishable from another Enron-related class action relied upon by defendants. In *Coy v. Arthur Andersen,* Case No. 01-4248 (SD Tex, Feb 6, 2002), the class was broadly defined to include all persons who "own, or owned, Enron shares since January 1, 1997." *Id* at 22. Judge Harmon, who is presiding over the multidistrict proceedings, found that "the ambiguous loose construction and language of the class definition can be read to include not only shareholders who purchased their stock before or on January 1, 1997 and still own it, but persons who bought and 'owned' the stock since January 1, 1997, and others in both these categories who sold it after the alleged misrepresentations." *Id* at 18. Based on that loose, overly inclusive language, Judge Harmon held that some claims were subject to SLUSA, dismissed those claims, and also exercised supplemental jurisdiction over the remaining state law claims under 28 USC § 1367. Unlike this case, *Coy* did not involve a pleading which expressly excluded claims based upon purchases or sales, nor was the class limited in time to persons who necessarily would have had to have purchased their shares outside of the applicable statute of limitations for claims under 15 USC § 10(b)(5). Here, unlike *Coy,* plaintiffs have successfully pled around SLUSA.

***6** Second, to the degree there is any potential ambiguity, the procedural posture of this case dictates remand. In deciding a motion to remand, the court looks to whether the case was properly removed to federal court in the first instance. *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1426 (9th Cir1984). "The burden of establishing federal jurisdiction is placed on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Id* (citations omitted)."Because of the 'Congressional purpose to restrict the jurisdiction of the federal courts on removal,' ··· federal jurisdiction 'must be rejected if there is any doubt as to the right of removal in the first instance." ' *Duncan v. Steutzle,* 76 F3d 1480, 1485 (9th Cir1996) (citations omitted). At a minimum, plaintiffs have repeatedly waived any claim, theoretical, possible, potential, or otherwise, by the sub-class that defendants insist might exist. Thus, this court has serious doubts that any claim asserted is based upon the "purchase or sale" of a covered security. Such doubts must be resolved in favor of remand.

For these reasons, this court's "preliminary assessment suggests that removal was improper."

ATTACHMENT/EXHIBIT 18
PAGE 4 OF 9

Meyers, 143 FSupp2d at 1049. As a result, this court agrees with plaintiffs that it need not proceed past the first step in the *Meyers* analysis and that remand is in order.

II. *Plaintiffs' Oral Motion to Amend*

During the May 13, 2002 hearing in this matter, this court suggested that the Complaint might include class members with theoretical federal claims. Plaintiffs then orally moved to amend the Complaint. May Transcript, pp. 5-10, 13. This court thereafter requested briefing on the propriety of an amendment to the Complaint to eliminate federal question jurisdiction and a subsequent remand given the current posture of the case.

Because this case should be remanded based on the current allegations in the Complaint, the cautionary oral motion to amend should be denied as moot. However, in the event that the *Meyers'* analysis is deemed faulty, then this court alternatively recommends that the motion to amend be granted and this case remanded to state court.[FN2]

FN2. Contrary to defendants' characterization, plaintiffs' motion to amend was not a concession that this court has jurisdiction over their claims. To the contrary, plaintiffs have consistently maintained that defendants improperly removed this action to federal court and only offered the amendment in the event that this court concluded that the Complaint included claims preempted by SLUSA.

A. *Right to amend as a matter of course*

FRCP 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." A motion to remand is not the type of responsive pleading that bars a plaintiffs' right to amend. After removal, a plaintiff maintains the right to amend without leave of court to eliminate the basis for federal question jurisdiction. *Naples v. New Jersey Sports & Expo. Auth.,* 102 F Supp2d 550 (D NJ 2000); *Grynberg Prod. Co. v. British Gas PLC,* 149 FRD 135, 137 (ED Tex 1993).

The right to amend provided under FRCP 15(a) after removal has been limited only in diversity cases. *See, eg, Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.,* 916 F Supp 1024 (D Nev 1996); *Bevels v. American States Ins. Co.,* 100 F Supp2d 1309 (MD Ala 2000). That limitation arises from the competing mandate set forth in 28 USC § 1447(e) which provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *Bevels,* 100 F Supp2d at 1312. A contrary rule would allow a plaintiff whose case had been removed to federal court to avoid any fraudulent joinder inquiry which could have been conducted had the non-diverse defendant been named in the original complaint. *Id.*

***7** These cases are clearly distinguishable from this case because 28 USC § 1447(e) is inapplicable to federal question cases, and the plain language of FRCP 15(a) admits no exception for cases removed to federal court. Thus, where, as here, the complaint has not been previously amended and and no responsive pleading has been served, a plaintiff retains the right to amend the pleading "as a matter of course" without leave of court to eliminate federal question jurisdiction.

B. *Leave to Amend*

Even if leave to amend is required, it should nevertheless be granted. Where the proposed amendment would not be futile, would not unfairly prejudice the opposing party, and is not proposed in bad faith, denial of leave to amend constitutes an abuse of discretion. *See Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of So. Calif.,* 648 F.2d 1252, 1254 (9th Cir1981). Interpreting Ninth Circuit authority, other district courts have granted leave to amend a removed complaint to eliminate federal claims. *See, eg, Doerrler v. Oakland/Alameda County Coliseum Complex, Inc.,* 2000 WL 1060493 (ND Cal, July 18, 2000); *Chow v. Hirsch,* 1999 WL 144873 (ND Cal, Feb 22, 1999); *Schmutzler v. Dinwiddie Constr. Co.,* 1995 WL 375599 (CD Cal., June 16, 1995). Leave of court was required in these cases because the complaint had been amended previously. Defendants do not - and could not - argue that the proposed amendment would unduly delay trial or

ATTACHMENT/EXHIBIT 18
PAGE 5 OF 9

is prejudicial or futile. Furthermore, a proposed amendment that eliminates any conceivable federal claim is not made in bad faith. *Baddie v. Berkeley Farms, Inc.*, 64 F3d 487, 490-91 (9th Cir1995) (plaintiff's "straightforward tactical decision" to amend the removed complaint to allege only state law claims did not constitute "manipulation"). Here it is evident that plaintiffs never intended to plead a federal cause of action and have done so, if at all, inadvertently. No forum manipulation can be found where a plaintiff seeks to eliminate a federal claim that was pled inadvertently. *See, eg, Dula v. McPherson*, 1999 WL 1939238 (MD NC 1999); *Moscovitch v. Danbury Hosp.*, 25 F Supp2d 74, 79 (D Conn 1998); *Schmutzler, supra.*

To bar amendment, defendants raise the specter of facing parallel state and federal proceedings. However, plaintiffs cannot pursue both state and federal claims based upon the allegations in the Complaint. As discussed above, any federal claim would be barred by both the federal statute of limitations and by *Blue Chip Stamps* which precludes claims of fraud under federal law by non-purchasers or holders of securities.

In sum, even if plaintiffs have no right to amend as a matter of course, leave to amend should be granted.

III. *Supplemental Jurisdiction*

Defendants also urge this court to retain supplemental jurisdiction over the state law claims. This court should reject this suggestion.

Defendants are putting the supplemental jurisdiction cart before the original jurisdiction horse. By limiting the class to those individuals who held their shares *prior to October 16, 1998,* plaintiffs have effectively eliminated any potential claim by the sub-class which defendants insist requires removal and dismissal under SLUSA. Thus, plaintiffs have successfully avoided SLUSA's reach. As a result, there is no original jurisdiction over plaintiffs' claims, and *ipso facto* no "supplemental" jurisdiction to assert.

***8** Moreover, even if this court originally had jurisdiction which it lost by allowing amendment, it should decline to exercise supplemental jurisdiction. In deciding whether to decline exercising its supplemental jurisdiction, a court considers the factors of comity between state and federal courts, judicial economy, fairness to the litigants, and convenience, along with whether the party seeking remand has engaged in "forum manipulation." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 357 (1988).

Plaintiffs have not attempted to engage in forum manipulation. Instead, they simply made a perfectly legitimate decision to only pursue state law holder claims. As discussed above, even if an amendment is required to achieve that result, such an amendment is a legitimate tactical move that does not constitute forum manipulation and therefore does not counsel against remand. As noted in by the Supreme Court, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ··· - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n7. There is nothing unusual about this case that dictates a different result. Other than this court considering a litany of briefs concerning the jurisdictional issue, nothing has transpired in this case to date. Furthermore, the only claims plaintiffs assert raise novel issues under state law, namely whether and under what circumstances a plaintiff may assert a claim that he or she was fraudulently induced to hold securities. Given this circumstance, principles of comity weigh heavily against retaining this action. *See, eg, Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 n32 (1984); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Financial Gen. Bankshares v. Metzger*, 680 F.2d 768, 776 (DC Cir1982); *Jones v. Fitch*, 665 F.2d 586, 593 (5th Cir1982). In short, the factors of judicial economy, fairness, and comity all point toward remand rather than toward the exercise of supplemental jurisdiction.

The factor of "convenience" cuts both ways. On the one hand, it would be very convenient for defendants to have every case filed against them in the same forum to prevent duplication of effort and to eliminate the risk of inconsistent rulings. On the other hand, it would be extremely inconvenient for plaintiffs to be forced or dragged into multidistrict litigation in a distant location where they may face an interminable wait for a decision on the basic issue of whether they should have been there in the first instance. Because the convenience of litigation in federal court versus state court depends upon the party asked, the factor of convenience is not particularly helpful in this case. As a result, all applicable factors weigh against, and this court should refuse to exercise,

ATTACHMENT/EXHIBIT 18
PAGE 6 OF 9

supplemental jurisdiction.

*CONCLUSION*

*9 As discussed above, this court finds that this case was not properly removed to this court in the first instance. Alternatively, this court has grave doubts about whether the case should have been removed, which mandates remand. Even if the current allegations do not mandate remand, this court finds that plaintiffs should be permitted to amend the Complaint to eliminate any doubt that they intended to assert no federal claims. Basic fairness dictates that the deliberate choice of plaintiffs to allege exclusively state-law claims should be honored. Defendants' arguments regarding potential applicability of SLUSA, as well as their suggestion that this case should be stayed, or that this court should exercise supplemental jurisdiction over plaintiffs' claims, should be rejected.

*RECOMMENDATIONS*

Upon review of the entire record in this case, this court concludes that remand is appropriate without amendment of the Complaint. Thus, plaintiff's Motion to Remand (docket # 6) should be GRANTED; defendant Andersen's Cross-Motion to Stay (docket # 22) should be DENIED; plaintiffs' oral motion to amend should be DENIED as moot; and this case should be remanded to Multnomah County Circuit Court.

*SCHEDULING ORDER*

Objections to these Findings and Recommendations, if any, are due July 9, 2002. If no objections are filed, then the Findings and Recommendations will be referred to a district court judge and go under advisement on that date.
If objections are filed, the response is due no later than July 26, 2002. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district court judge and go under advisement.
D.Or.,2002.
Chinn v. Belfer
Not Reported in F.Supp.2d, 2002 WL 31474189 (D.Or.)

Motions, Pleadings and Filings (Back to top)

• 3:0200131 (Docket) (Feb. 01, 2002)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ATTACHMENT/EXHIBIT 18
PAGE 7 OF 9

Result List
1 Doc

**Links for**
Not Reported in F.Supp.2d

<< Full Screen List
Locate in Result
KeyCite citation: GO

ATTACHMENT/EXHIBIT 18
PAGE 8 OF 9

C Citing References available

KeyCite

Full History

Direct History (Graphical View)

Citing References

Monitor With KeyCite Alert

**Full-Text Document**

- Case Outline

**Petitions, Briefs & Filings**

ResultsPlus[sm]

About

**Corpus Juris Secundum: Federal Courts**

1. Courts of the District of Columbia, Multidistrict Litigation

**Corpus Juris Secundum: Federal Civil Procedure**

2. Trial, In General, Joint Trial of Issues in Different Actions; Consolidation of Actions--Actions Pending in Different Districts

**Causes of Action**

3. Cause of Action Involving Claim Transferred to Multidistrict Litigation

See More ResultsPlus

**Table of Authorities**

ATTACHMENT/EXHIBIT 18
PAGE 9 OF 9