**Cynthia L. Ducey**
**Delaney Wiles, Inc.**
**1007 West Third Avenue, Suite 400**
**Anchorage, Alaska 99501**
**(907) 279-3581/(907) 277-1331 fax**
cld@delaneywiles.com

**Attorneys for defendant Safeway, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DENISE FAYE GILLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SAFEWAY, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) Case No. A05-234  CV (TMB) |

**OPPOSITION TO MOTION FOR SECOND AMENDMENT OF COMPLAINT TO JOIN
NON-DIVERSE DEFENDANT AND OPPOSITION TO MOTION TO REMAND**

### INTRODUCTION

Defendant Safeway, Inc. ("Safeway") file a single joint opposition to plaintiff's Motion for Second Amendment of Complaint to Join Non-diverse Defendant and plaintiff's Motion to Remand.  This Court should deny plaintiff's motions because: (1) the non-diverse defendant plaintiff seeks to join is neither a necessary nor an indispensable party under Fed. R. Civ. P. 19; (2) plaintiff cannot state a cause of action against an individual Safeway pharmacist relating to an alleged violation of a regulatory duty; moreover plaintiff has failed to identify any regulatory record-keeping duty the pharmacist violated; (3) plaintiff seeks to join a non-diverse defendant merely to defeat federal jurisdiction; (4) denying plaintiff's motion will not prejudice plaintiff; and

(5) the balance of the equities militates in favor of denying plaintiff's motion. For the foregoing reasons, this Court should deny plaintiff's Motion for Second Amendment of Complaint and plaintiff's Motion to Remand.

## FACTS

On or about Friday, September 17, 2004, Safeway dispensed a prescription drug, Ambien, to plaintiff - who has previously used the drug. Complaint at 3. Once Safeway became aware the drug had been dispensed through a discussion with plaintiff, it immediately alerted plaintiff's medical provider. *Id*. Plaintiff claims she was involved in a subsequent vehicle collision. Complaint at 3-4.

Plaintiff has sued Safeway, alleging Safeway incorrectly dispensed the medication in attempting to fill plaintiff's prescription for another drug. Complaint at 3. Safeway has admitted it mistakenly dispensed Ambien. Answer at 2. Safeway has taken the high road in conceding liability for the erroneous dispensation. *Id*. However, whether Safeway's dispensation of Ambien caused plaintiff's accident is disputed because blood and urine testing revealed high levels of THC, the active drug in marijuana. *See* Exhibit A, Washington State Toxicology Lab Report at 1. Because plaintiff had high levels of THC in her system while she was driving to pick up her grandchildren, Safeway contests that the dispensation of Ambien caused plaintiff's accident. Complaint at 3.

The parties learned that a sample of plaintiff's frozen blood, taken after her traffic accident by law enforcement officers, remained in the Fall of 2005. Since the parties learned a sample of frozen blood remained, and at plaintiff's counsel's suggestion, Safeway has been fully cooperative in plaintiff's efforts to perform the destructive blood testing. *See* Exhibit B, Letter to Plaintiff's Counsel, November 16, 2005. Plaintiff has attempted to portray Safeway as refusing to disclose

the individual Safeway pharmacist's contact information and thereby preventing plaintiff from performing destructive blood testing. Plaintiff's Motion for Second Amendment of Complaint at 2-5. However, on November 16, 2005, undersigned defense counsel mailed plaintiff's counsel a signed stipulation establishing terms for the destructive testing of plaintiff's frozen blood sample. *Id.* Letter to Plaintiff's Counsel, Nov. 16, 2005, at 1. And on January 13, 2006, defense counsel again wrote plaintiff's counsel, proposing terms for the destructive blood testing. *See* Exhibit C, Letter to Plaintiff's Counsel, January 13, 2006. Plaintiff has not responded to either of these letters. In addition, undersigned defense counsel has informed plaintiff's counsel that Teresa Heilig, the individual Safeway employee plaintiff seeks to depose, was on family medical leave and has not set a precise return date. *See* Exhibit D attached hereto, Letter to plaintiff's counsel, January 19, 2006, at 1. Counsel for Safeway also telephonically informed plaintiff's counsel that Heilig was on family medical leave, and obtained from plaintiff's counsel agreement to wait until Heilig had returned from leave until plaintiff deposed Heilig. *See* Exhibit E attached hereto, Affidavit of Counsel at 1-2. Shortly thereafter on January 24, defense counsel had a telephone conversation with plaintiff's counsel, Elizabeth Smith. At that time defense counsel initiated discussion about the status of the blood testing. Plaintiff's counsel, Elizabeth Smith indicated that she was reluctant to test the sample since Heilig was unrepresented. Ms. Ducey informed Ms. Smith at that time that she represented Ms. Heilig and that there was no objection to proceeding with the blood testing. Ms. Smith asked that Ms. Ducey confirm her representation of Heilig in writing and once received she would review the stipulation gain to propose amendments. Ms. Ducey confirmed her representation of Ms. Heilig by letter dated January 25, 2006. See affidavit of Cynthia L. Ducey, attached. For reasons unknown to defense counsel, plaintiff's counsel has refused to sign the stipulation for destructive testing or propose any amendments, has failed to

state whether any additional information was needed to proceed with testing and is herself delaying the destructive testing for reasons that are purely within her control. There is no additional action that needs to be taken before the stipulation for destructive testing can be signed. Plaintiff's counsel is simply using the issue of destructive testing improperly to suggest to the court that testing cannot occur until there is an amendment to the complaint and a remand. These express and implicit assertions by the plaintiff are without factual basis. Plaintiff's Motion for Second Amendment of Complaint at 5.

Plaintiff has also done an "about face" on the reasons for seeking to amend her complaint. Plaintiff originally moved to amend her complaint to add "john doe" defendants. Plaintiff's original Motion to Amend Complaint at 1. In that motion, plaintiff admitted she could not yet bring a claim against a Safeway employee because discovery was necessary to determine whether any individual Safeway employees were liable. *Id.* at 1 and 3. Safeway opposed on the ground that plaintiff sought to amend her complaint merely to defeat federal diversity jurisdiction. Opposition to Motion to Amend Complaint at 6-8. Safeway also argued plaintiff had no need to join an individual Safeway employee because plaintiff had no cause of action against an individual employee. Opposition to Motion to Amend Complaint at 7-8. In reply to Safeway's Opposition, plaintiff argued for the first time that she could state a cause of action against an individual Safeway employee for a violation of a regulatory duty to keep records, and suggested for the first time the amendment was necessary because of the need to test the blood sample. Reply on Motion to Amend Complaint at 19. In that reply, plaintiff stated she sought "corrective records." *Id.*

Judge Ralph R. Beistline granted plaintiff's Motion to Amend Complaint. Order Granting Plaintiff's Motion to Amend Complaint ("Order") at 7. Judge Beistline found plaintiff could be prejudiced if she were not allowed to amend her complaint because plaintiff would not be allowed

to bring a claim against an individual pharmacist for "corrective records" and because plaintiff would not be able to perform destructive testing of blood in a separate case against an individual Safeway employee. Order at 5-6. Because plaintiff raised these claims for the first time in her reply, Safeway had no opportunity to rebut the disingenuous nature of these claims.

Although plaintiff had previously stated it was premature to join an individual Safeway employee until discovery had revealed plaintiff had a cause of action against an individual employee and until depositions had been taken, plaintiff now seeks to amend her complaint a second time to join Teresa Heilig, the Safeway pharmacy employee that dispensed Ambien to plaintiff. Plaintiff's Motion for Second Amendment of Complaint at 1 and 3. Safeway opposes plaintiff's motion, since her sole motive is to defeat diversity jurisdiction.

## ARGUMENT

**I.      This Court Should Deny Plaintiff's Motion Because Heilig is Neither Necessary Nor Indispensable Under Fed. R. Civ. P. 19**

As stated in the previous Order in this case, 28 U.S.C. § 1447(e), rather than Fed. R. Civ. P. 15(a), should apply when a plaintiff seeks to amend a complaint so that diversity jurisdiction could be destroyed after removal. The Ninth Circuit Court of Appeals has ruled that, in combination with Fed. R. Civ. P. 19, 28 U.S.C. § 1447(e) expands the district court's options when considering an attempt to join a necessary, non-diverse party after the case has been removed to federal court. *Yniques v. Cabral*, 985 F.2d 1031, 1035 (9th Cir. 1993) disapproved of on other grounds by *McDowell v. Calderon*, 197 F.3d 1253 (9th Cir. 1999). The *Yniques* court ruled a district court may: "(1) deem the party 'indispensable' and dismiss the case; (2) deem the party *not* indispensable and continue its jurisdiction over the lawsuit without joinder; or (3) allow joinder and remand the case to state court. *Id*. Thus, whether to allow plaintiff to amend her

complaint to add a non-diverse defendant depends on whether that non-diverse defendant is indispensable.

This Court should deem Heilig neither necessary nor indispensable under Fed. R. Civ. P. 19[1] and continue its jurisdiction over the lawsuit without joinder. To determine whether a party is indispensable, a court must engage in a two-part analysis: (1) it must first determine "whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in 'equity and good conscience'" the court should dismiss the suit. *Dawavendawa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002) (citations omitted). If a court determines a party is not necessary to the suit, the court need not reach the second step of the analysis because the court has de facto determined the party is not indispensable. To determine whether a party is necessary, the court must consider

---

[1] Fed. R. Civ. P. 19(a) & (b) provide:

> **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

> **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

whether, in the party's absence, the court can accord complete relief to the plaintiff. *Id*. If the court cannot accord the plaintiff complete relief in the party's absence, the party is necessary. *Id*.

Here, Heilig is not a necessary party under Fed. R. Civ. P. 19 because this court can accord plaintiff complete relief in Heilig's absence. Plaintiff has not contended nor established that the damages recoverable by her from Safeway are different either in kind or in quantity or scope than those damages sought from Safeway. Thus if she recovers from Safeway, her tort damages are not more limited than if she had sued Heilig. (For instance any statutory limitations on punitive damages.) Safeway has admitted negligence. Moreover, the defenses that are assertible are not different in kind or scope from the damages Safeway would assert. As mentioned above, there are disputed issues of material fact about the cause of plaintiff's damages, as well as the quantity. Thus, Heilig's defenses are the same as Safeway's. Safeway has admitted the Heilig acted within the course and scope of her employment and is liable for her actions under the doctrine of *respondeat superior*. Complete relief not different in quality or quantity can be afforded to plaintiff from defendant Safeway in the absence of Heilig as an individually named defendant.

Moreover, as discussed below in this memorandum pp. 14-30, plaintiff cannot state a cause of action against an individual Safeway pharmacy employee regarding an alleged violation of a regulatory duty to keep records. Safeway has already taken the high road and conceded liability; therefore, plaintiff can seek full and complete relief in its claim against Safeway. But plaintiff cannot obtain different or greater relief from an individual pharmacy employee than she can seek from Safeway because plaintiff has no cause of action against an individual Safeway employee. Plaintiff has not alleged a Safeway pharmacy employee was acting outside the course and scope of her duties in dispensing Ambien to plaintiff on September 17, 2004, or in keeping records of prescription drug dispensations. Accordingly, because plaintiff can seek complete damages for the

mis-fill from Safeway, which has already conceded liability, Heilig is not a necessary party and the motion to amend should be denied.  *Dawavendawa*, 276 F.3d at 1155.

Regarding plaintiff's attempt to obtain "[c]orrective compilation and release of full and candid patient records compliant with HIPPA, DEA, and/or insurance standards", as sought in plaintiff's complaint, plaintiff already has the records Safeway possesses regarding the medications dispensed to plaintiff.  Specifically, plaintiff's complaint that the computer-generated "Medical Expenses" log, which Safeway provided plaintiff, incorrectly states Safeway dispensed Ultracet instead of Ambien, the drug plaintiff actually received, does not create a cause of action against Heilig.  As a result, this court can accord complete relief to plaintiff absent joinder of Heilig.  Heilig is not a necessary party; she is merely a witness in this case.  Heilig cannot be indispensable because a determination that a party is necessary is a threshold determination for finding a party indispensable.  Accordingly, this Court need not inquire whether Heilig is an indispensable party.

Plaintiff has previously admitted there is no current claim that can be stated against an individual Safeway pharmacy employee.  Plaintiff's original Motion to Amend Complaint at 1-3.  In her original motion, plaintiff admitted it was "premature" to bring a claim against a pharmacy employee until discovery revealed that an individual pharmacy employee was liable.  *Id*. at 1, 3.  However, plaintiff comes before this Court now, attempting to join Heilig, even though plaintiff has no factual basis for a claim against her.  Given plaintiff's own statement that joining an individual Safeway employee was premature until discovery revealed such employee was liable, and given that no discovery has revealed any liability on Heilig's behalf, this Court, by plaintiff's own admission, should rule that plaintiff cannot join Heilig.

II.    **The Motions Should be Denied Because Plaintiff Cannot State a Claim Against Heilig.**

A.    **Plaintiff Has No Implied Civil Action For Violation Of A Pharmacy Regulation.**

Plaintiff has no cause of action against Heilig individually for a violation of a regulatory duty to keep records. Neither the Pharmacy Act (Alaska Stat. § 08.80.003 – 08.80.490) nor the Alaska Administrative Code provide a private right of action based on a violation of a regulatory duty. This Court should not imply a private cause of action. The Alaska Supreme Court has examined the six factors stated in Restatement (Second) of Torts (1979) § 874A to determine whether a court should imply a private cause of action based on a statute. *Peter v. Schumacher Enterprises, Inc.*, 22 P.3d 481, 489 (Alaska 2001). The court has considered:

> (1) The nature of the legislative provision – is it clear and specific or broad and general? (2) The adequacy of existing remedies – are they sufficient to accomplish the policy of the provision or do they require a supplementation? (3) Will allowing an implied tort action based on the statutory provision interfere with statutory remedies or supplement existing means of enforcement? (4) The significance of the purpose of the legislative provision. (5) The extent of the change in tort law that permitting an implied cause of action would bring about. (6) The burden the new implied tort cause of action will place on judicial machinery.

*Id*.

In *O.K. Lumber Company, Inc. v. Providence Washington Ins. Co.*, the Alaska Supreme Court, applying similar factors,[2] ruled that a state statute, the Unfair Claim Settlement Practices Act, did not impliedly create a private cause of action for third-party claimants. 759 P.2d 523, 527 (Alaska 1988). The court so ruled because the statute did not readily lend itself to enforcement by a private cause of action. *Id*. The court found remedies for statutory violations were set forth specifically and in detail, giving rise to an implication of exclusivity. *Id*. And the court found the statute's list of prohibited acts was extensive; some violations were minor; and standards for

---

[2] *Peter v. Schumacher*, 22 P.3d at 488-89.

determining whether a prohibited act was committed were often imprecise. *Id.* The court noted the modest monetary sanctions imposed for violations of the statute stood in stark contrast to the potential compensatory and punitive damage awards available in a private tort cause of action. *Id.* The court acknowledged the purpose of the statute was to benefit both insureds and third party claimants, and that implying a private cause of action could deter conduct the Act seeks to deter. Nevertheless, the court found allowing a private cause of action was inconsistent with the existing statutory scheme. *Id.*

Two subsequent Alaska Supreme Court cases finding implied causes of action are distinguishable on their facts. In *Alaska Marine Pilots v. Hendsch*, the court considered whether a private cause of action was implied by a statute providing that a pilot organization recognized by the Alaska Board of Marine Pilots shall be open to membership by all people licensed to pilot vessels in the region in which the organization is recognized. 950 P.2d 98, 104 (Alaska 1997). The court ruled the statute implied a cause of action because: (1) the statute was easily susceptible to individual enforcement; (2) because absent an implied cause of action there would be no remedy; (3) because an implied cause of action would not interfere with existing remedies, but would actually assist government enforcement; and (4) an implied cause of action would not unduly burden the courts. *Id.* at 105.

Similarly, the *Schumacher Enterprises* court found an implied cause of action because: (1) unlike the statute in *O.K. Lumber*, the relevant statute easily lent itself to use in a private tort action; (2) unlike the statute in *O.K. Lumber*, the existing scheme did not provide an adequate remedy; (3) an implied cause of action would not interfere with state enforcement; (4) the policy purpose was extremely significant; (5) an implied cause of action would not make a drastic change

in tort law; and (6) an implied cause of action would not unduly burden the courts. *Schumacher Enterprises*, 22 P.3d at 489-90.

O.K. Lumber* should control this Court's consideration of the implied cause of action issue because the above factors weigh against finding an implied private cause of action based on a pharmacist's regulatory duties. Regarding the first factor, the voluminous pharmacist statutory and regulatory duties are so broad and general that they do not lend themselves to enforcement by a private cause of action. The numerous pharmacist statutory and regulatory duties (Alaska Stat. § 08.80.003 – 08.80.490 & 12 AAC 52.010 – 52.995) encompass broad and diverse subject areas including licensing, examination, generic drugs, nonprescription drugs, prescription drugs, controlled substances, sterile pharmaceuticals, and security of the pharmacy, to name a few. Plaintiff would be hard-pressed to find a broader and more complex regulatory scheme in which to argue for an implied private cause of action. Unlike the specific statutory scheme in *Schumacher* that simply required insurers to either offer UM/UIM coverage with certain minimum limits or obtain a written waiver, the broad regulatory scheme at issue here does not easily lend itself to an implied private cause of action. *Schumacher Enterprises*, 22 P.3d at 484. And unlike the statute at issue in *Alaska Marine Pilots*, where the court found there would be no adequate remedy, the plaintiff in this case can seek full and complete relief from Safeway, which has already acknowledged liability. *Alaska Marine Pilots*, 950 P.2d at 105. Finally, as noted by the *O.K. Lumber* court, the modest regulatory monetary sanctions in pharmacy regulations ($5,000.00), in contrast to the large damage awards a tort plaintiff could obtain could "upset the implicit legislative judgment that the broad [regulatory] prescriptions … are tolerable because of the limited sanctions imposed when violations occur." *O.K. Lumber*, 759 P.2d at 527; Alaska Stat. § 08.01.075(a).

Regarding the second factor (adequacy of existing remedies to achieve the policy of the provision), the severity of the available remedies for violations of regulatory and statutory duties establishes the existing remedies are more than adequate to deter wrongful conduct. The purpose of the Pharmacy Act is to "promote, preserve, and protect the public health, safety, and welfare by and through the effective control and regulation of the practice of pharmacy." Alaska Stat. § 08.80.005. A pharmacist that violates a provision of the Pharmacy Act is guilty of a class B misdemeanor.[3] In addition, the Board of Pharmacy ("Board") can take any one of numerous severe disciplinary actions: permanently revoke a license; suspend a license for a specified period; censure or reprimand a licensee; impose limitations or conditions on the professional practice of a licensee; require a licensee to submit to peer review; or impose a civil fine of $5,000.00. Alaska Stat. § 08.01.075(a); 08.80.261(a). The extensive and extreme remedies available to the Board for a violation establish the adequacy of the remedies to achieve public safety via effective regulation of pharmacy.

Regarding the third factor, implying a private cause of action would interfere with statutory remedies because regulation of the practice of pharmacy is statutorily entrusted to the Board of Pharmacy. Five of the seven members of the Board are licensed pharmacists that have been actively engaged in the practice of pharmacy for three years immediately preceding their appointment. Alaska Stat. § 08.80.010(a). The Alaska Legislature entrusted the Board to use its technical knowledge to effectively regulate the practice of pharmacy. Allowing a jury of laypersons rather than the experts to "regulate" pharmacists would defeat the express purpose of the Legislature. Implying a private cause of action would also lead to inconsistent results where, *e.g.*, the Board, in its discretion, chose not to discipline a pharmacist but a plaintiff successfully sued the pharmacist in tort. In addition, a decision by the Board to refrain from investigating

---

[3] Alaska Stat. § 08.80.460(a).

**OPPOSITION TO MOTION FOR SECOND AMENDMENT OF COMPLAINT**
*Gillen v. Safeway, Inc.*; Case No. A05-234 CV (TMB)                    Page 12 of 35

pharmacists while pharmacists defend against a private cause of action could result in incompetent pharmacists continuing the practice of pharmacy for years while litigation continued. The instant case is thus distinguishable from *Alaska Marine Pilots*, because in that case the court ruled an implied private cause of action would not interfere with government enforcement, but would actually assist the government. *Alaska Marine Pilots*, 950 P.2d at 105.

Regarding the significance of the legislative provision, the Pharmacy Act seeks to achieve public safety through effective regulation of pharmacy. While the straightforward importance of the purpose of achieving public safety could be argued to militate either for or against implying a private cause of action, the Alaska Legislature chose to achieve public safety by regulation, not by jury verdicts in tort cases. Thus, to achieve the Legislature's purpose of achieving public safety via regulation, this Court should not imply a private cause of action.

Regarding the fifth factor, permitting an implied cause of action in the instant case would create out of whole cloth a new tort cause of action. The instant case is distinguishable from *Shumacher Enterprises* because the supreme court had twice previously allowed private causes of action under the statute at issue in that case. *Shumacher Enterprises*, 22 P.3d at 488 and 489. This case is also distinguishable from *Alaska Marine Pilots*, where the court ruled an implied private cause of action would not significantly change tort law. *Alaska Marine Pilots*, 950 P.2d at 105.

Under the final factor, implying a private cause of action here would unduly burden courts because it would replace highly experienced, licensed pharmacists on the Board with lay juries as the arbiters of regulatory discretion. Implying a private cause of action here would also forge a completely new cause of action in tort that plaintiffs might use not only against pharmacists, but against all licensed professions in an alleged violation of a regulatory duty. Even judges lack the

technical expertise of experienced, licensed pharmacists to determine when to enforce the voluminous statutory and regulatory requirements placed on pharmacists. In conclusion, each individual factor militates against implying a private cause of action based on the statutory and regulatory duties of pharmacists. Moreover, considering the factors together leads to the inexorable conclusion that this Court should not imply a private cause of action in this case.

**B.**    **The Motions Should Be Denied Because The Pharmacy Regulations Do Not Establish Heilig Breached Any Of Their Requirements.**

In plaintiff's Reply on her Motion to Amend Complaint, plaintiff argued it was necessary to join individual Safeway pharmacy employees because only the individual employee responsible for filling the prescription drug order can be made to correct the erroneous or misleading pharmacy records. Plaintiff's Reply on her Motion to Amend Complaint at 19. Plaintiff states that corrective records were sought among the remedies in the original state court Complaint. Plaintiff's Reply at 19. Plaintiff's Complaint sought general, compensatory and special damages and also mentioned "[c]orrective compilation and release of full and candid patient records compliant with HIPPA, DEA, and/or insurance standards". Complaint at 9.

Plaintiff cannot state a cause of action against any individual Safeway pharmacy employee because neither Alaska Statutes regarding the regulation of the practice of pharmacy, nor interpreting regulations found in the Alaska Administrative Code create a private cause of action against a pharmacist, based on an alleged violation of any regulatory duty. Alternatively, plaintiff cannot state a cause of action against any individual Safeway pharmacy employee regarding pharmacy records because plaintiff has established no regulatory duty that any pharmacy employee violated regarding record keeping. Plaintiff has argued she can state a cause of action against individual pharmacy employees based on three regulatory provisions regarding the practice of pharmacy found in the Alaska Administrative Code. Plaintiff's Reply on Motion to

Amend Complaint at 19.  None of the regulatory provisions plaintiff cites provides a private cause of action against pharmacists; further, none of the regulatory provisions cited by plaintiff establishes that an individual pharmacy employee violated any regulatory duty regarding record keeping.

The Alaska Board of Pharmacy adopted the regulatory provisions cited by plaintiff pursuant to the Pharmacy Act, Alaska Statutes § 08.80.003 – 08.80.490.  Pursuant to the Pharmacy Act, the Board of Pharmacy "is responsible for the control and regulation of the practice of pharmacy" including "enforc[ing] the provisions of [the Pharmacy Act] relating to the conduct or competence of pharmacists practicing in the state, and the suspension, revocation, or restriction of licenses to engage in the practice of pharmacy".  Alaska Stat. § 08.80.030(a); (b)(8).  Pursuant to the Pharmacy Act, the Board of Pharmacy may also take the following actions, singly or in combination:

> permanently revoke a license; suspend a license for a specific period; censure or reprimand a licensee; impose limitations or conditions on the professional practice of a licensee; require a licensee to submit to peer review; impose requirements for remedial professional education to correct deficiencies in the education, training, and skill of the licensee; impose probation requiring a licensee to report regularly to the board on matters related to the grounds for probation; impose a civil fine not to exceed $5,000.

Alaska Stat. § 8.01.075 and § 08.80.261.  Thus, the Pharmacy Act and the interpreting regulations created the Board of Pharmacy; gave the Board the power to regulate the practice of pharmacy; established requirements for the practice of pharmacy; and established penalties for violations of the relevant statutes and regulations, which the Board is responsible for enforcing.  However, neither the Pharmacy Act nor the interpreting regulations create a private cause of action against pharmacists relating to a pharmacist's regulatory record-keeping duties.  Therefore, plaintiff cannot state a cause of action against an individual Safeway pharmacy employee.

In an attempt to gin up a cause of action against an individual pharmacy employee, plaintiff first cited 12 AAC § 52.210 "Pharmacist duties". Plaintiff's Reply on Motion to Amend Complaint at 19. Under 12 AAC § 52.210, all persons except licensed pharmacists (and pharmacist interns acting under the direct supervision of a pharmacist, pursuant to 12 AAC § 52.220) are excluded from performing certain duties:

> (1) receiving an oral prescription drug order, including refill approval or denial that includes any change to the original prescription drug order;
> (2) consulting with a prescriber regarding a patient or prescription;
> (3) interpreting a prescription drug order;
> (4) determining the product required for a prescription;
> (5) interpreting data in a patient medication record system;
> (6) making a final check on all aspects of a completed prescription and assuming the responsibility for a filled prescription, including the accuracy of the drug prescribed and of the prescribed drug's strength, labeling, and proper container; and
> (7) consulting with a patient or a patient's agent regarding a prescription or information contained in the patient's medication record system.

12 AAC § 52.210. This regulatory provision merely prevents any one not licensed by the Board of Pharmacy from performing these enumerated duties. This provision does not create a private cause of action against a pharmacist, based on an alleged violation of a duty. Moreover, this regulatory provision does not establish that any individual Safeway pharmacist violated any regulatory duty by producing a drug dispensation record stating the name of the drug the pharmacist attempted to dispense, rather than the drug erroneously dispensed.

Plaintiff also cited 12 AAC § 52.450 "Prescription drug order records". Plaintiff's Reply on Motion to Amend Complaint at 19. Under 12 AAC § 52.450, a "pharmacy," not "pharmacist," shall maintain prescription drug orders for two years from the date of filling or the date of the last dispensed refill. That regulatory provision states in its entirety:

> (a) A pharmacy shall maintain prescription drug orders for a period of two years from the date of filling or the date of the last dispensed refill. The prescription

        drug orders shall be maintained in numerical order and in a manner that ensures they will remain legible for the required two year period.

   (b) To comply with (a) of this section, a pharmacy shall maintain the prescription drug orders by keeping in its file

    (1) the original written prescription drug order;

    (2) a plain paper version of the prescription drug order received by facsimile or digital electronic transmittal; or

    (3) a prescription drug order put into writing either manually or electronically by the pharmacist.

12 AAC § 52.450.  This regulatory provision requires pharmacies, not individual pharmacists, to maintain prescription drug orders, received in whatever form: handwritten, typed, faxed or emailed, in numerical order and in a way that will remain legible for two years from when the prescription was originally filled or when the prescription was last refilled.  Plaintiff's reference to this regulatory requirement is apropos of nothing because this provision does not create a private cause of action against a pharmacist, nor does plaintiff establish that a Safeway pharmacy (not pharmacist) failed to maintain records for the required two-year period or in the requisite means to ensure legibility.  Therefore, this regulatory provision establishes that plaintiff does not possess a cause of action against an individual Safeway pharmacy employee.

    Plaintiff also cited 12 AAC § 52.460 "Prescription drug order information" in an attempt to establish that plaintiff has a cause of action against an individual Safeway pharmacy employee.  Plaintiff's Reply on Motion to Amend Complaint at 19.  Under 12 AAC § 52.460, a pharmacist must obtain information about the patient, the prescribing doctor, the name, strength and quantity of the drug prescribed, etc. before the pharmacist may fill the prescription drug order.  At the time of dispensing, the pharmacist must also add to the drug order certain information: the identification number of the prescription drug order; the initials or identification code of the dispensing pharmacist; the quantity dispensed if different from the quantity prescribed; etc.  That regulatory provision states in its entirety:

(a)  Before a pharmacist may fill a prescription drug order, the pharmacist shall obtain the following information:

    (1)  name of the patient or, if the prescription drug order is for an animal, species of the animal and name of the owner;

    (2)  address of the patient unless the prescription drug order is for a noncontrolled substance and the address is readily retrievable on another appropriate, uniformly maintained pharmacy record, such as a patient medication record;

    (3)  name and, if the prescription drug order is for a controlled substance, the address and DEA [Drug Enforcement Administration] registration number of the prescribing practitioner;

    (4)  name and strength of the drug prescribed;

    (5)  quantity prescribed;

    (6)  directions for use;

    (7)  date of issue;

    (8)  refills authorized, if any; and

    (9)  if a written prescription drug order, the prescribing practitioner's signature

(b)  At the time of dispensing, a pharmacist shall add the following information to the prescription drug order:

    (1)  unique identification number of the prescription drug order;

    (2)  initials or identification code of the dispensing pharmacist;

    (3)  quantity dispensed, if different from the quantity prescribed;

    (4)  date of dispensing, if different from the date of issue;

    (5)  if the drug was prescribed by generic name or if an equivalent drug product other than the one prescribed was dispensed, for the drug product actually dispensed, at least one of the following:

        (A)  the name of the drug product's manufacturer or distributor;

        (B)  the national drug code number;

        (C)  the short name code; or

        (D)  the trade name.

12 AAC § 52.450.  This regulatory provision requires a pharmacist, before that pharmacist may fill a prescription, to obtain information; it also requires a pharmacist to add information to the prescription at the time of dispensing a prescription drug.  This provision, like the others cited by plaintiff, does not create a private cause of action against a pharmacist regarding a regulatory duty.  Even if plaintiff possessed a cause of action against a Safeway pharmacy employee for violation of a regulatory duty, plaintiff has not established that a Safeway pharmacy employee violated this

regulatory provision.  In conclusion, all the regulatory provisions cited by plaintiff establish that plaintiff has no cause of action against any individual Safeway pharmacy employee.

In addition to citing regulatory provisions, plaintiff also cited a reported decision to support her argument that she possessed a cause of action against an individual Safeway pharmacy employee for an alleged failure to keep records.  Plaintiff's Reply on Motion to Amend Complaint at 19.  It seems plaintiff cited the case for the proposition that a private cause of action can lie against a pharmacist based on the pharmacist's duty to keep adequate records regarding drug dispensation.  Plaintiff's Reply on Motion to Amend Complaint at 19.  But the case plaintiff cited does not establish a private cause of action against a pharmacist for the violation of a regulatory duty.  Plaintiff cited a case in which a New York intermediate appellate court reviewed on appeal a determination by the Commissioner of the state Department of Health that a pharmacy had violated regulations requiring the pharmacy to keep records.  *Amber Rock Pharmacy, Inc. v. Axelrod*, 490 N.Y.S.2d 783, 785 (N.Y. App. Div. 1985).  The Commissioner had previously found, after an administrative hearing, that the pharmacy had failed to keep records regarding the receipt and dispensation of controlled substances.  *Id.* at 784.  The Commissioner had imposed a civil fine on the pharmacy for violating the state regulatory record-keeping duty.  *Id.* at 785.  The appellate court affirmed the Commissioner's fine on the ground that it was supported by substantial evidence.  *Id.* at 784.

*Amber Rock* involved an appeal by a pharmacy to a state appellate court, after the Department of Health had determined in administrative proceedings, that the pharmacy had violated a regulatory duty.  That case did not even involve an attempt by a private party to state a cause of action based on an alleged violation of a regulatory duty.  Plaintiff cites no authority that

Alaska Statutes or interpreting regulations create a cause of action for a private party against a pharmacist for the failure to comply with any record-keeping duty.

Research has revealed no Alaska case law considering whether a plaintiff can state a private cause of action against a pharmacist based on a violation of a regulatory duty. Research has also revealed no jurisdiction outside Alaska ruling that a plaintiff can state a private cause of action against a pharmacist based on a violation of a regulatory duty. But case law from other jurisdictions supports Safeway's argument that a private party does not possess a cause of action against a pharmacist for the violation of her regulatory duties. Courts from various jurisdictions have ruled that a violation of a pharmacist's regulatory duties, mandated by a state board, does not create a private cause of action for a pharmacy client against the pharmacist. For example, a Florida Court of Appeals has ruled that the Florida Pharmacy Act and interpreting regulations do not create a private cause of action because neither the Act nor its legislative history shows a desire to create a private cause of action. *Johnson v. Walgreen Co.*, 675 So.2d 1036, 1037-38 (Fla. App. 1996).

In *Johnson v. Walgreen Co.*, the court rejected the claim by the wife of a deceased drug recipient that the pharmacist had a duty to warn the recipient of potential adverse drug reactions. *Id.* at 1037. The court relied on a prior decision of the Florida Supreme Court, *Murthy v. N. Sinha Corp.*, in which the court considered whether a state statute relating to construction contracting provided a private cause of action. 644 So.2d 983, 985 (Fla 1994). The *Murthy* court agreed with the plaintiff that the statute required the qualifying agent of a construction contractor to supervise a corporation's construction contracts. *Id.* at 985. However, the court emphasized that this violation of a regulatory duty did not give rise to a private cause of action. *Id.* The court found that the statute established licensing procedures and regulatory duties for the construction industry

and created a regulatory board to enforce these procedures and duties. *Id.* at 986. The court reasoned that because the statute itself did not provide a private cause of action, and because the legislative history of the statute did not reveal an intent to create a private cause of action, there was no evidence of a legislative intent to create a private cause of action. *Id.*

The *Johnson v. Walgreen Co.* court likewise found the legislative history of the Florida Pharmacy Act was devoid of any indication the legislature intended to create a private cause of action. *Johnson v. Walgreen Co.*, 675 So.2d at 1038. The court also emphasized that the Act provided for the regulation of pharmacists by the state board, rather than providing standards to be enforced by private citizens. *See id.* Therefore, the court affirmed the dismissal of plaintiff's suit.

In *Moore v. Memorial Hospital of Gulfport*, the Mississippi Supreme Court affirmed a grant of summary judgment to a pharmacist, ruling that, while a violation of the State Board of Pharmacy's regulations governing pharmacists may serve as evidence of negligence, the regulations do not create a private cause of action. 825 So.2d 658, 665-66 (Miss. 2002). In that case, the parents of an injured drug recipient alleged the pharmacist violated the Board of Pharmacy's regulations by dispensing a drug despite information that contraindicated the dispensation to a pregnant woman of the drug prescribed. *Id.* at 663.

A Texas Court of Appeals has ruled that the Texas Pharmacy Act and regulations interpreting the Act do not create a private cause of action against a pharmacist when the pharmacist did not warn the customer of potential adverse side effects from the drug. *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 466-67 (Tex. Ct. App. 2000). In *Morgan v. Wal-Mart*, the parents of a deceased man argued, pursuant to the Texas Pharmacy Act and its regulations, the pharmacist violated a duty to warn the man of the potential adverse side effects of the prescribed

drug.  *Id*. at 466.  The court rejected the parents' argument, ruling that neither the Act nor interpreting regulations create a private cause of action.  *Id*. at 466-67.

Finally, the federal district court for the Eastern District of Michigan has ruled, in a product liability action against a drug manufacturer, that the federal Food, Drug, and Cosmetic Act does not create a private cause of action.  *Keil v. Eli Lilly and Co.*, 490 F.Supp. 479, 480 (E.D. Mich. 1980).

According to the above cases, a pharmacist's regulatory duties may serve as evidence of the standard of care required of pharmacists for purposes of pursuing a negligence cause of action against Safeway under a *respondeat superior* theory.  Safeway does not dispute that.  However, a violation of an administrative regulation does not create a private cause of action against a pharmacist.  *See Moore v. Memorial Hospital of Gulfport*, 825 So.2d at 665-66.  Plaintiff has not established that an alleged violation of a regulatory record-keeping duty creates a private cause of action against a pharmacist based on the violation of that regulatory duty, alone.  Pursuant to Alaska Statutes and interpreting regulations, the party responsible for enforcing regulations regarding the practice of pharmacy is the Board of Pharmacy.  Alaska Stat. § 08.80.030(a); (b)(8).

Legislative history of the Pharmacy Act also reveals that the legislative intent behind the Act was not to allow a private cause of action, but rather to provide a more cohesive way to regulate the practice of pharmacy.  A member of the Alaska Board of Pharmacy explained to the Senate Labor and Commerce Committee that the purpose behind 1996 amendments to the Act was because the pharmacy community realized the pre-existing statutes were "antiquated and obsolete."  Committee Minutes, Senate Labor and Commerce Committee hearing on S.B. 158 (Apr. 25, 1995)(comments of Chris Coursey, Member of Alaska Board of Pharmacy).  One Board of Pharmacy member explained: "many of the [then-existing] statutes have been introduced in a

piecemeal fashion and are overly restrictive or specific and would be more appropriate [*sic*] addressed in regulations. . . There is existing but very vague language in the area of discipline or unprofessional conduct." *Id*. This explanation reveals that the drafters and commentators of the 1996 Amendments to the Act intended the Board of Pharmacy to have a modernized, centralized ability to regulate pharmacists. The same Board of Pharmacy member stated that one of the purposes of the 1996 Amendments was to "broadening the ability of the Board to discipline or sanction a licensed person." *Id*. This legislative history also establishes that the existing regulatory scheme intends for the Board of Pharmacy, rather than private citizens, to control regulation of pharmacists. Like the statute at issue in *Johnson v. Walgreen Co.*, neither the Pharmacy Act nor its legislative history reflect an intent to create a private cause of action for a violation of a regulatory duty. Therefore, like the court in that case, this Court should rule that plaintiff cannot bring a cause of action against a pharmacist for a violation of a regulatory record-keeping duty. Moreover, even if plaintiff could establish that a private cause of action lies against an individual pharmacy employee, based on an alleged violation of a regulatory record-keeping duty, plaintiff has shown no regulatory record-keeping duty any Safeway pharmacy employee violated. Thus, plaintiff is limited to a negligence claim against Safeway for the prescription mis-fill.

Safeway has already taken the high ground, conceding liability. Answer at 2. Safeway also concedes plaintiff has a negligence cause of action against Safeway regarding the individual Safeway pharmacist's mis-fill of plaintiff's prescription on September 17, 2004. This cause of action lies against Safeway under a *respondeat superior* theory, according to which Safeway is responsible for the actions of its employees while acting in the course and scope of their duties. If plaintiff can prove Ambien caused her accident, rather than the high level of THC that was in her

system, plaintiff will have a strong case against Safeway. However, plaintiff possesses no cause of action against any individual Safeway pharmacy employee because neither the Pharmacy Act nor interpreting regulations create a private cause of action against a pharmacist regarding regulatory duties. Further, even if plaintiff could state a cause of action against an individual Safeway pharmacy employee, plaintiff has failed to establish that a Safeway pharmacy employee violated any regulatory duty regarding record keeping. In conclusion, plaintiff has no cause of action against a Safeway pharmacy employee.

Because Heilig is neither a necessary nor indispensable party, there is no reason she should be involved in this action. Plaintiff can seek full and complete relief for any damages from Safeway under a negligence cause of action. In addition, plaintiff has no private cause of action against Heilig for an alleged violation of a regulatory duty to keep records. Moreover, the factors identified in case law militate against implying a private cause of action for a violation of a pharmacist's regulatory duty. Accordingly, this Court should deem the party *not* indispensable and continue its jurisdiction over the lawsuit without joinder. *See Yniques v. Cabral*, 985 F.2d at 1035.

## III.    This Court Should Deny Plaintiff's Motion Because Joinder Is Inappropriate Under Factors Established by Case Law

After a case has been removed on the basis of diversity jurisdiction, courts have discretion under 28 U.S.C. § 1447(e) to deny a plaintiff's attempt to subsequently defeat diversity jurisdiction by attempting to amend the complaint to add non-diverse parties. *See* 28 U.S.C. § 1447(e): "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

In considering whether to allow joinder under Section 1447(e), courts consider:

(1) the extent to which the joinder of a non-diverse party is sought merely to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; (4) any other factors bearing on the equities.

*Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.*, 916 F.Supp. 1024, 1027 (D. Nev. 1996) (citing cases setting forth similar factors courts may consider in deciding whether to permit joinder, and noting that the plaintiff's motive in joining nondiverse defendants is important when evaluating removal cases). Courts should also consider the original defendant's interest in its choice of forum. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

Analysis of these factors in this case clearly establishes that this Court should deny plaintiff's second motion for amendment.

### A. Plaintiff Seeks to Amend Complaint Merely to Defeat Federal Diversity Jurisdiction

Plaintiff has moved to amend her complaint merely to defeat federal diversity jurisdiction by naming a non-diverse party as an additional defendant because plaintiff cannot state a cause of action against Heilig. This is so because, as argued above in Section I, Alaska case law does not imply a private cause of action against a pharmacist for an alleged violation of a regulatory duty to keep records. And, even if plaintiff could state a cause of action against Heilig, plaintiff has failed to identify any regulatory duty to keep records Heilig has committed.

After a defendant has properly removed a case, the plaintiff may not join non-diverse parties merely to defeat federal jurisdiction. *Winner's Circle of Las Vegas, Inc.*, 916 F.Supp. at 1026. Various courts have denied a plaintiff's post-removal motion to amend the complaint to add a non-diverse party and remand the case when the purpose of the amendment is simply to defeat diversity jurisdiction. *See, e.g., White v. City Fin. Co.*, 277 F.Supp.2d 646, 650-51 (S.D. Miss. 2003) (denying plaintiffs' request to amend complaint to add claims against non-diverse defendant

employees because "it is plain to the court that the purpose of plaintiffs' proposed amendment is to destroy diversity jurisdiction"); *Newman v. Motorola, Inc.*, 218 F.Supp.2d 783, 787 (D. Md. 2002) (denying plaintiff's motion to amend complaint to add non-diverse defendant, upon finding that purpose was to destroy diversity jurisdiction, that explanation for delay was insufficient, and that plaintiff could fully recover in absence of proposed defendant); *Perry v. Hartford Ins. Co. of Midwest*, 196 F.Supp.2d 447, 449 (E.D. Tex. 2002) (denying plaintiff's post-removal motion to amend complaint to add non-diverse defendant where "the amendment is requested primarily for the purpose of defeating federal jurisdiction").

When the Fourth Circuit Court of Appeals was confronted with a situation similar to the case before this Court, it affirmed the district court's refusal of the amendment under the doctrine of fraudulent joinder. *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990). In that case, a business venture plaintiff brought a defamation action against the owner of a television station that aired two allegedly defamatory broadcasts regarding plaintiff's business and against an individual speaker that appeared on one of the television broadcasts. *Id*. at 1002. After Group W, the television station's owner, had removed the action to federal court, plaintiff sought to amend its complaint to join the non-diverse individual to the claims originally stated only against Group W, regarding the broadcast on which the individual speaker did not appear. *Id*. at 1003. The district court denied the motion to amend because the plaintiff could not state a cause of action against the individual regarding the television broadcast on which he did not appear. *Id*. The court ruled plaintiff's attempt to join the non-diverse individual was fraudulent joinder because the plaintiff could state no cause of action against the individual. *Id*. at 1003-04. The Fourth Circuit affirmed the district court's ruling because plaintiff could state no cause of action against the non-diverse individual. *Id*. at 1004.

This Court should follow the Fourth Circuit's ruling in *AIDS Counseling and Testing Centers* because here, as in that case, plaintiff's attempt to join an individual against whom plaintiff cannot state a cause of action represents fraudulent joinder. Although plaintiff cannot state a cause of action against Heilig, plaintiff seeks to join Heilig to this case merely to defeat federal diversity jurisdiction. Therefore, this Court should deny plaintiff's motion.

Plaintiff's attempt to join Heilig has no other purpose but to defeat federal jurisdiction. Plaintiff has previously admitted that she could not bring a cause of action against an individual Safeway employee until discovery revealed an individual employee was liable. Plaintiff's original Motion to Amend Complaint at 1-3. Although discovery has revealed that no individual Safeway employee is liable, plaintiff now seeks to join Heilig. By plaintiff's own admission, plaintiff cannot bring a cause of action against Heilig because there is no factual basis to support a claim against an individual Safeway employee. Moreover, Heilig's presence in this suit is immaterial because Safeway has admitted it dispensed Ambien to plaintiff, and this admission allows plaintiff to seek full and complete relief from Safeway in a negligence cause of action. Unless plaintiff has reason to claim that Heilig was not acting in the course and scope of her duties as a Safeway employee in dispensing the prescription, plaintiff has no right to join Heilig. Plaintiff admits at all times relevant to the complaint the pharmacy employee involved in the mistaken filling of the prescription acted in the course and scope of her employment.

In his Order Granting Plaintiff's Motion to Amend Complaint, Judge Beistline found it was not apparent plaintiff sought to join a non-diverse party merely to defeat federal jurisdiction. Order at 4. As established above in Section I, Heilig is neither a necessary nor an indispensable party, and plaintiff cannot state a cause of action against Heilig. Plaintiff's argument that destructive blood testing requires this Court to allow her to amend her complaint is merely a

smoke screen because after plaintiff's rights against Safeway are adjudicated, plaintiff will have no further cause of action against an individual Safeway employee. Therefore, plaintiff will have no need for further testing of the blood sample. Since plaintiff cannot state a cause of action against Heilig plaintiff has nothing to gain from joining Heilig but merely defeating federal jurisdiction.

As demonstrated by the weight of legal authority discussed above, after a case has been properly removed, a plaintiff cannot amend its complaint to add a non-diverse party when the purpose of the amendment is simply to defeat diversity jurisdiction. Because plaintiff seeks to join Heilig for no other reason but to destroy federal jurisdiction, this Court should deny plaintiff's motion.

**B.      This Court Should Deny Plaintiff's Motion Because Denying Plaintiff's Motion Will Not Prejudice Plaintiff**

This Court should deny plaintiff's motion because denying the motion will not prejudice plaintiff. Courts should deny post-removal motions attempting to join non-diverse parties when the plaintiff will suffer no serious prejudice if the amendment is not allowed. *Winner's Circle of Las Vegas, Inc.*, 916 F.Supp. at 1027; *Perry v. Hartford Ins. Co. of Midwest*, 196 F.Supp.2d at 450 (concluding that plaintiff would suffer no serious prejudice if amendment to join non-diverse defendant is denied); *White*, 277 F.Supp.2d at 651 ("plaintiffs have not demonstrated that they will be prejudiced by the denial of their motion, and in fact, there is nothing to suggest that these plaintiffs will be unable to obtain full relief on any cognizable claims without the presence of the unnamed resident defendants"). Prejudice is "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th ed. 2004).

In *Boon v. Allstate Ins. Co.*, the United States District Court for the Central District of California ruled that plaintiffs suing insurer on a claim that insurer wrongly refused to defend

would not be prejudiced by the court's denial of their motion to amend their complaint to join a non-diverse defendant.   229 F.Supp.2d 1016, 1025 (C.D.Cal. 2002).   After the insurer had removed the case to federal court, the plaintiffs sought to join a non-diverse defendant on a claim that one of the plaintiffs was entitled to indemnity for the non-diverse defendant's conduct contributing to plaintiff's loss.  *Id.* at 1019.  The court denied plaintiffs' motion to amend their complaint, finding denying plaintiffs' motion would not prejudice plaintiffs.  *Id.*  The court ruled that plaintiffs had already joined the insurer, which served as a source of payment for plaintiffs' damages.  *Id.*  And the court found plaintiffs could pursue the non-diverse defendant in state court. *Id.*

The reasoning of the court in *Boon* applies with even greater weight here because, not only has plaintiff already joined Safeway, from which plaintiff can seek damages, but also Safeway is the only source of damages for plaintiff.  And while the *Boon* court found the plaintiffs would not be prejudiced because they could pursue an action in state court against the non-diverse defendant, plaintiff in this case will not be prejudiced by denying joinder of Heilig because plaintiff has no cause of action against Heilig.   Accordingly, denying plaintiff's motion to amend will not prejudice plaintiff.

Here, Safeway has taken the high road, admitting liability for the dispensation of Ambien. Complaint at 3.  Plaintiff can seek  full and complete relief from Safeway under a  *respondeat superior* liability theory, based on Safeway's admission that Heilig acted in the course and scope of her employment and that the pharmacist incorrectly dispensed Ambien.  Plaintiff need not add Heilig to seek full relief from Safeway for her damages.  If this Court determines that Safeway

was negligent and that such negligence resulted in damages to plaintiff, plaintiff will obtain full relief.[4]

In his Order Granting Plaintiff's Motion to Amend Complaint, Judge Beistline found plaintiff would be prejudiced if she were not allowed to amend her complaint because she may have a separate claim against an individual pharmacist she would not be able to bring. Order at 5. Judge Beistline also relied on the fact that destructive testing of plaintiff's frozen blood sample in this case could prejudice plaintiff should she attempt to bring a separate action against a Safeway employee. Order at 6. As established above in Section I, Alaska case law does not imply a private cause of action in this situation. Moreover, plaintiff cannot state a cause of action against Heilig because plaintiff has not established Heilig violated a regulatory duty to keep records. Plaintiff's argument that destructive blood testing requires this Court to allow her to amend her complaint is merely a smoke screen because after plaintiff's rights against Safeway are adjudicated, plaintiff will have no further cause of action against an individual Safeway employee and no need for further blood testing. Because plaintiff cannot state a cause of action against Heilig plaintiff will not be prejudiced if this Court denies her Motion for Second Amendment of Complaint.

Denying joinder will not prejudice plaintiff in the least because plaintiff retains her only cause of action, a negligence cause of action against Safeway. Plaintiff will be allowed to present her case to a neutral and fair federal court, which properly has jurisdiction over this case. Plaintiff cannot seek any different or greater relief in a case against an individual employee than plaintiff can seek in her case against Safeway. Because plaintiff has no other cause of action and because the evidence subjected to destructive testing will not be needed in any subsequent case, this Court should deny plaintiff's motion.

---

[4] Safeway disputes that the misfill was the legal cause of any damages. No Ambien was found in plaintiff's system and plaintiff had a high amount of THC in her system.

**OPPOSITION TO MOTION FOR SECOND AMENDMENT OF COMPLAINT**

C.    **This Court Should Deny Plaintiff's Motion Because the Balance of Equities Favors Denying Plaintiff's Motion**

Safeway's interest in retaining federal jurisdiction outweighs any interest plaintiff could present. In evaluating a plaintiff's post-removal motion to amend, this Court should also consider miscellaneous factors bearing on the equities. *See Winner's Circle of Las Vegas, Inc.*, 916 F.Supp. at 1027. In evaluating the equities, it is important to recognize that "the diverse defendant has an interest in retaining the federal forum. Indeed, the removal statutes are predicated on giving the diverse defendants a choice of a state or federal forum." *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Therefore, "[w]hen an amendment would destroy jurisdiction, most authorities agree that leave should be denied unless there exist strong equities in its favor." *Alcantra v. Prudential Life Ins. Co. of America*, 75 F.Supp.2d 563, 565 (E. D. Tex. 1999).

In a similar case before the Alaska District Court in 2005, Judge James K. Singleton, Jr. denied plaintiff's motion to amend complaint to add a non-diverse party, after defendant had timely removed the case. Exhibit F, *Lutz v. First Financial Ins. Co., Inc.*, No. A04-0229 CV (D. Alaska June 23, 2005) (order denying motion to amend complaint to add a non-diverse party). In that case, the plaintiff was suing an insurer for an alleged failure to defend and indemnify. *Id* at 1. The plaintiff sought to add as a non-diverse party an insurance adjuster who was neither an indispensable party nor a necessary party under Federal Rule of Civil Procedure 19. *Id.*

The Alaska District Court, relying on some of the case law cited here by Safeway, ruled that the equities tilted in favor of denying plaintiff's motion and retaining jurisdiction. *Id* at 2. The Alaska District Court also relied on the fact that the case could easily be resolved without the non-diverse insurance adjuster as a party. *Id.* Further, the court noted that the plaintiff could call the non-diverse insurance adjuster as a witness at trial. *Id.* The court refused to allow plaintiff to add a non-diverse party because it appeared to the Court that plaintiff sought joinder "primarily to

defeat this Court's jurisdiction[.]" *Id.* Judge Singleton reasoned that plaintiff would not be prejudiced by denying the motion because full relief was available in the federal district court. *Id.* Finally, noting that an action by plaintiff against the non-diverse party in state court would not be barred by the statute of limitations, this Court denied plaintiff's motion. *Id.*

As Judge Singleton ruled in *Lutz v. First Financial Ins. Co., Inc.*, this Court should also deny plaintiff's motion to amend complaint to add a non-diverse third party in this case because each of these same considerations militate in favor of allowing federal jurisdiction to continue. First, plaintiff in this case has no cause of action against Heilig. As a result, there is no purpose to join Heilig but to defeat federal jurisdiction. Second, plaintiff will not be prejudiced by a denial of her motion because plaintiff can seek full and complete relief from Safeway. Finally, balancing the equities, plaintiff stands to lose nothing from a denial of her motion, while Safeway could retain the neutral and fair federal forum to which it is entitled. *See Hensgens v. Deere & Co.*, 833 F.2d at 1179.

In his Order Granting Plaintiff's Motion to Amend Complaint, Judge Beistline found the only prejudice Safeway would suffer if the court allowed plaintiff to amend her complaint was a mere potential for a remand away from Safeway's preferred forum. Order at 6. Now that plaintiff has sought to join Heilig, a non-diverse defendant, that potential is a certainty if this Court grants plaintiff's motion. This Court properly has jurisdiction over this case against Safeway, a diverse defendant. 28 U.S.C. § 1332(a)(1) and 1441(a). The purpose of diversity jurisdiction is to protect a nonresident from partisanship that state courts might show for their own citizens. *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 330 n.1 (5th Cir. 1982). In order to avoid subjecting Safeway to the potential bias a state court might show in favor of plaintiff, this court should retain jurisdiction over this matter, which has been properly removed to federal court.

In his Order Granting Plaintiff's Motion to Amend Complaint, Judge Beistline balanced the equities in plaintiff's favor, relying on three considerations: plaintiff's ability to preserve her rights against individual Safeway employees, plaintiff's ability to litigate all claims in one action, and the potential that blood evidence would be destroyed and thus not available in a separate action in state court. Order at 6. Safeway has established that none of these concerns still remain. As established above in Section I, Alaska case law does not imply a private cause of action in this situation. And plaintiff cannot state a cause of action against Heilig because plaintiff has not established Heilig violated a regulatory duty to keep records. Because plaintiff cannot state a cause of action against Heilig, Judge Beistline's concern that plaintiff be able to preserve her rights against individual pharmacists is no longer necessary. In addition, because plaintiff has only one cause of action plaintiff will be able to litigate all her claims in one suit. Finally, the concern that blood evidence might not be available for use in a separate action is rendered moot because plaintiff cannot bring a separate action against an individual Safeway employee. Plaintiff can seek full and complete relief for her damages in this action against Safeway. Because plaintiff has no potential for prejudice if this Court denies plaintiff's motion the equities weigh decidedly in Safeway's favor.

According to plaintiff's own pleadings, it would be premature to join an individual Safeway employee until discovery has revealed that an individual employee is liable. Plaintiff's original Motion to Amend Complaint at 1, 3. Yet, here plaintiff attempts to join Heilig without any factual basis that Heilig, individually, is liable to plaintiff. Because plaintiff cannot bring a cause of action against Heilig, and because, even if plaintiff could, she has failed to identify a cause of action against Heilig, this Court should deny plaintiff's motion.

IV.     **This Court Should Deny Plaintiff's Motion for Second Amendment of Complaint Because Plaintiff Cannot State a Cause of Action Against Heilig**

As demonstrated above, plaintiff has no private cause of action for any alleged violation of a regulation effecting pharmacists.  Alternatively, however, even if she did have such private cause of action, the regulations themselves establish no duty by a pharmacist that applies to the facts here.  There is simply no regulation covering the situation of a mis-fill.  Instead the regulations only speak to drugs that are actually prescribed by a physician.  Accordingly, she cannot state a claim against Heilig for any violation based on a regulatory duty.

## CONCLUSION

In sum, this Court should deny plaintiff's motions because: (1) Heilig is neither a necessary nor an indispensable party under Fed. R. Civ. P. 19; (2) plaintiff cannot state a cause of action against an individual Safeway pharmacist relating to an alleged violation of a regulatory duty; moreover plaintiff has failed to identify any regulatory record-keeping duty Heilig violated; (3) plaintiff seeks to join Heilig merely to defeat federal jurisdiction; (4) denying plaintiff's motion will not prejudice plaintiff; and (5) the balance of the equities militates in favor of denying plaintiff's motion.  For the foregoing reasons, this Court should deny plaintiff's Motion for Second Amendment of Complaint and plaintiff's Motion to Remand.

DATED at Anchorage, Alaska this 21 day of February, 2006.

**DELANEY, WILES**
Attorneys for Defendant
SAFEWAY, INC.

s/ Cynthia L. Ducey
Delaney Wiles, Inc.
1007 West 3rd Avenue, Suite 400
Anchorage, AK 99501
Phone (907279-3581/ Fax (907) 277-1331
cld@delaneywiles.com
ABA# 8310161

**<u>Certificate of Service</u>**

On this 21st day of February, 2006,
I caused to be served by electronic filing
of this document upon:

Elizabeth N. Smith
The Law Office of Kenneth J. Goldman, P.C.
550 S Alaska Street, Suite 4-5
Palmer, AK  99645

<u>s/  Cynthia L. Ducey</u>

113573