Elizabeth N. Smith
Attorney for Plaintiff
Law Offices of Kenneth J. Goldman, P.C.
550 S. Alaska Street Ste 4-5
Palmer, AK  99645
Phone:  (907) 746-2346  Fax (907) 746-2340
Email:  ofcmgr@pobox.mtaonline.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | | |
|---|---|---|
| DENISE FAYE GILLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAFEWAY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | Case No. A05-0234CV (RRB) |

## COMBINED REPLY TO OPPOSITION ON PLAINTIFF DENISE GILLEN'S MOTIONS FOR SECOND AMENDMENT OF COMPLAINT TO JOIN NON-DIVERSE DEFENDANT AND FOR REMAND

This is Plaintiff Denise Gillen's combined reply brief on the two pending companion motions to amend the Complaint, this second time to substitute Teresa Heilig who was finally identified by Defendant on January 16, 2006, and then to remand the underlying case to the Palmer Courthouse in light of destroyed diversity.  This reply brief is due on or before the deadline of Friday, March 3, 2006.  This brief addresses the points raised in Defendant Safeway's Opposition to Motion for Second Amendment of Complaint to Join Non-Diverse

Defendant and Opposition to Motion to Remand, dated February 21, 2006, in the same order as presented by Defendant.

**Before presenting anything else, though, Plaintiff wants to say that Safeway still refuses to disclose the residential address or citizenship locale of the pharmacist, Teresa Heilig, as of the date of filing of Plaintiff's Complaint at the Palmer Courthouse in September of 2005.  Safeway has for several months now ignored all formal and informal requests for this basic piece of information while still fighting remand.**

## A.  INTRODUCTION:

The United Stated District Court at Alaska, the Honorable Ralph R. Beistline presiding, expended considerable time on this matter when favorably deciding Plaintiff Denise Gillen's first motion for amendment to join "John Doe and/or Jane Doe."   Everyone understood that such fictitious "Doe" parties were likely local Carrs/Safeway pharmacy licensees who were described in the original state complaint and, further, who were to be identified and substituted as specifically named parties as soon as Defendant Safeway would tardily answer a four-month old interrogatory.   The unanswered interrogatory was personally served with the initial state complaint before quick defense removal to federal court.

Here, Defendant Safeway is taking the opportunity to re-litigate its same old arguments why the corporation does not think that the case should be remanded out of its preferred federal forum, despite that much of this was already addressed in substance under 28 U.S.C. Section 1447(e) just a few weeks ago.

**It is fascinating, though, that nowhere in Safeway's thirty-five (35) page opposition brief, including multiple exhibits, does Safeway ever disclose the precise residential address (at time of filing of complaint in state court or since then) of the pharmacist, Teresa Heilig.**

**Safeway finally admitted in January of 2006 that she was the person who physically inserted the wrong medication, but still withholds her address.**

The request for Teresa Heilig's residential address was prominently raised by Plaintiff in written interrogatories, telephone calls, follow-up letters on the late answers to the written interrogatories, and briefing on her two motions for amendment (and then remand). This omission of Teresa Heilig's exact residential whereabouts cannot be accidental. It is now several dozens of pages of opposition briefing from Safeway later, but Plaintiff and the court are still left to infer whether Teresa Heilig is or may be a Palmer, Alaska resident.

It surely seems like a lot of thwarted work to get a straight-up answer from Safeway to a September, 2005 interrogatory which, on its face, does not seem that complex, as following:

**Interrogatory No. 1:**  Please state the full name, **_residential address_**, and telephone number of each pharmacy employee who actually filled or physically dispensed Ambien, instead of the prescribed Ultracet or Ultram, to or for Denise Gillen on or about September 16 or September 17, 2004.

*See Exhibit 4 attached to Plaintiff's January 4, 2006 Reply on Plaintiff' Denise Gillen's Motion to Amend Complaint to Add Jane Doe, Plaintiff's First Set of Interrogatories and Request for Production, 9/9/05 (**hand-served on Safeway's registered agent on 9/16/05 along with state complaint**); See also Exhibit 10 attached to Affidavit of Counsel, 3/1/06 filed herewith (containing 1/20/06 letter wherein Plaintiff's counsel asked, again for residential address and advised that it was necessary to evaluate federal diversity/remand).*

In conjunction with the first motion for amendment (to add "Jane Doe"), the United States District Court's **ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT,** dated January 12, 2006, already accepted at Page 4 thereof that Plaintiff "Gillen's purpose in amending the Complaint was or is not to avoid federal jurisdiction."

The United Stated District Court, the Honorable Ralph R. Beistline, further took note of the role of the unanswered interrogatory at Page 5 of the January 12, 2006 ORDER, thereafter balancing the equities as following:

Fourth, the balance of equities favors granting Gillen's motion. The only prejudice that Safeway would suffer if the Court allows Gillen to amend the Complaint is the potential remand of the case to state court, away from Safeway's preferred forum. Given that remand is not certain at this point, this does not weigh heavily in Safeway's favor. On the other hand, Gillen's ability to preserve her rights against the individual pharmacists, litigate all claims in one action, and the destructive nature of the blood testing weigh in favor of granting Gillen's motion.

*ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT, 1/12/06, pp. 5-6 (including Footnote 15 on 12 Alaska Admin. Code Sec. 52.210, as to separate claims and duties against the individual pharmacist(s), not Safeway, for corrective records).*

## B. <u>FACTS</u>:

It is glaring that Plaintiff and the United States District Court are still left to wonder, despite discovery, letters from the Law Offices of Kenneth J. Goldman, P.C., and conspicuous briefing, whether Teresa Heilig is a local resident of Alaska and non-diverse. From a factual perspective, the bench should just take it "as a given" at this point.

Moving along, of course, there are some "red herrings" in Safeway's "FACTS" section of the February 21, 2006 opposition brief. Somewhere along the way, Safeway lost track of the admitted fact that Denise Gillen was its innocent malpractice victim on a medication error. No matter how much Safeway tries to "smear" Plaintiff Denise Gillen (for example, she has smoked pot), the hardship worked upon this malpractice victim in terms of requiring her to split parties, split causes of action and remedies, split testing on limited blood, recall experts, and split trials between two different court systems (federal and state) must be weighed into consideration of the remand issue.

For just one illustration, it hardly matters at Page 2 of the opposition brief as to the September, 2004 medication error, wherein Safeway admits that Ambien was mistakenly dispensed in place of Ultracet, that Plaintiff Denise Gillen was a person "who has previously

used the drug." Why would it matter that a patient had previously been prescribed Ambien, in April and May of 2004 at 5 milligrams (one-half of the later erroneous 10 milligram dosage), while taking it knowingly when crawling into bed instead of unknowingly at time of driving a vehicle? It is almost as if Safeway is using a blaming "*quid pro quo*" approach to its victim. Safeway seemingly implies that just because Denise Gillen had separately taken Ambien knowingly at half dosage at bedtime months before she somehow should have detected Safeway's error when the pharmacy professional did not do so or that she somehow should have bodily tolerated the erroneous medication (at double dosage) better once she did unknowingly consume it in a different daytime context.

Another "red herring" arises in the context of marijuana. Safeway states two times at Page 2 of its opposition brief that blood and urine testing "revealed high levels of THC." It is expected that expert testimony will be introduced at trial on the disputed issue whether a particular residual or half-life level of THC correlates to any sort of physical impairment (or causation of impaired driving, accident, and arrest), but this is a trial-type evidentiary issue or at least a summary judgment issue. At this stage, the issue is irrelevant as a threshold in deciding whether the complaint should be amended a second time to include the erring local pharmacist or whether the action, as amended, should then be remanded to state court.

Safeway's only defense is a simple one on causation; i.e., whether Safeway can successfully deflect part of its liability in so much as Denise Gillen's blood sample, taken at or after arrest for DUI, admittedly tested positive for THC (legal marijuana) when she otherwise tested negative for alcohol and illegal drugs. Ambien was never tested either way and still has not been tested to date, although the urgency is that Ambien dissipates in a stored sample over time. This is why immediate destructive blood testing is relevant.

As for stipulation to destruction blood testing, at Pages 2 and subsequent of the opposition brief, it is untrue that Plaintiff Denise Gillen has been unresponsive to attempts to organize testing. The bottom line is that there is a logistical problem. This logistical problem is that there is "not enough blood to go around" for all of the testing desired by Safeway. While Plaintiff Denise Gillen only wants to use a small portion of the specimen for testing of a single substance, Ambien, Safeway wants to repeat all sorts of alcohol and drug panels already done by the State of Washington's Toxicology Laboratory plus do some more panels as well. It is unknown what testing Teresa Heilig would want, whether the same or different batteries of testing, but in any event Teresa Heilig's desires for testing may further over-deplete the insufficient blood sample. Nor does Plaintiff consent to embark on destructive testing with Teresa Heilig while she is still an unjoined pharmacist/party.

Letters and written exchanges, all authored except for Exhibits 7 and 9 by the Law Offices of Kenneth J. Goldman, P.C., are attached to the Affidavit of Counsel filed herewith. Such exhibits show **great effort on Plaintiff Denise Gillen's part** to locate the missing blood sample, investigate private laboratories, define and pin down test codes and costs, meet on language in testing stipulations, talk to defense counsel for Safeway, discuss chemical/drug correlations, and otherwise get ready **for destructive testing immediately upon joinder of the pharmacist, Teresa Heilig. These are included as exhibits attached to the Affidavit of Counsel filed simultaneously herewith.** Many hours were recently invested by Plaintiff's counsel which demonstrates anything but insincerity on the subject. The exhibits, attached to the Affidavit of Counsel filed herewith, are as following:

| Exhibit | Description |
|---|---|
| 1 | Letter, 10/25/05, Relaying surprise location |

of blood sample in Washington and saying immediate testing wanted due to dissipation of Ambien

2               Letter, 11/3/05, Asking for list of test panels wanted by Safeway's counsel, saying "time is of the essence" on dissipating Ambien

3               Letter, 12/12/05, talking to Safeway's counsel about objectionable language in Safeway's testing stipulation; i.e., language saying Ambien tested negative (which was in fact never tested) while THC tested positive

4               Letter, 12/27/05, Agreeing to pay one-half of test costs and again asking Safeway which specific panel code numbers it wanted run on the lab sample

5               Plaintiff's First Supplement to Initial Disclosures, 12/31/05, transmitting National Medical Services lab procedures for specimen submission

6               Letter, 1/13/06, Plaintiff asking for deposition of erring pharmacist and production of DEA controlled substance logs at deposition

**7**               **Letter, 1/13/06, Authored by DELANEY WILES that the parties overlooked that the Washington State Lab is holding a small sample of only 2 milliliters of blood left with testing of Ambien requiring .45 milliliters [but Safeway's multiple proposed tests on alcohol and drugs requiring far more than what is left for the rest of the blood]**

**8**               **Letter, 1/17/06, Plaintiff conveying that she only wants Ambien tested (.45 milliliters), but also conveying that destructive testing cannot proceed before joinder of the pharmacy licensee which**

|   |   |
|---|---|
|   | **could only be accomplished by receiving Safeway's Answers to Interrogatories [such answers to interrogatories identifying Teresa Heilig as the erring pharmacist being received by Plaintiff finally and for the first time on 1/16/06]** |
| **9** | **Letter, 1/19/06, Authored by DELANEY WILES advising that Teresa Heilig was on family medical leave and advising deposition would probably have to wait until April, 2006** |
| **10** | **Fax, 1/20/06, Plaintiff asking for residential address of Teresa Heilig so as to evaluate federal diversity/remand and saying April, 2006 was a long time to wait for her deposition** |
| 11 | **Letter, 1/24/06, Plaintiff trying to set up 4/19/06 as deposition date for Teresa Heilig [DELANEY WILES STILL NOT RESPONDING TO SUCH ATTEMPTED DEPOSITION SET-UP FOR 4/19/06]** |
| 12 | Plaintiff's Fifth Supplement to Initial Disclosures, 1/27/06, Containing Dr. Nickoloff's letter of opinion on necessary tests which should be run on tiny remaining blood sample |
| **13** | Plaintiff's Sixth Supplement to Initial Disclosures [partial], 3/1/06, Enclosing Dr. Nickoloff's article on uncorroborated correlation between plasma THC level and physiological and behavioral effects |

   <u>**What Safeway is really saying is that it badly wants Plaintiff Denise Gillen to launch into testing before and without joinder of the pharmacist and to do so while the amendment and remand issues are still pending (with Safeway hoping the motions are eventually denied). This would expose Plaintiff, an admitted pharmacy malpractice victim,**</u>

**to not only splitting her defendant-parties, claims and actions between federal and state courts but also to splitting her pre-trial destructive blood testing (and the binding evidentiary effect thereof) between federal and state courts as well. Safeway wants the federal court to impose this practice so as to preserve Safeway's preferred federal forum, despite the serious prejudice it would work on Plaintiff Denise Gillen.**

Safeway's thirty-five-page brief does not give Teresa Heilig's residential address. Exhibit 10 to the Affidavit of Counsel, dated March 1, 2006, clearly asks for it, yet again, so as to evaluate the remand issue while discovery goes forward.

The evidentiary effect of destructive testing with all formally named parties inside one joint action under Rule 34, Fed.R.Civ.P., is far different than what Safeway demands that Plaintiff Denise Gillen acquiesce to here. Safeway apparently feels like in January of 2006 it demanded (and still apparently demands) that Denise Gillen should rush into destructive testing, despite that Teresa Heilig was not is not formally joined in the action yet. The fact that DELANEY WILES gave oral and written notice by the end of January, 2006, of its intention to jointly represent Teresa Heilig does not make any difference. As a basic principle, Plaintiff Denise Gillen reasonably wants to engage in destructive testing within a single united case joining all interested and joined parties. Plaintiff does not want to be in a position, as apparently would be Safeway's ideal outcome, whereby it is destructively testing a small blood sample in federal court with Safeway while suing and litigating against Teresa Heilig in state court. For illustration, Plaintiff does not want to "end up" arguing in a split state court case that there was once in past time a federal destructive blood test done with Safeway that should somehow be applied to Teresa Heilig because, although Ms. Heilig was an unjoined and anywhere unsued individual, she still had known about the testing through her counsel while on family medical

leave.

While Plaintiff does not like it that deposition of Teresa Heilig cannot be taken for months yet, Plaintiff takes as legitimate and accepts Safeway's claim that she is on medical leave at Page 4 of the opposition brief.  It is not that Plaintiff wants to stall out Ms. Heilig's deposition further.  Indeed, Plaintiff is trying to set the deposition for April 19, 200, without any response yet from Safeway (*See Exhibit 11 attached to Affidavit of Counsel, 3/1/06*).

Plaintiff produces correspondence showing her request for several months now to depose Ms. Heilig and showing, later, concern that it is a long time to wait to depose Ms. Heilig once she is back from family medical leave.  *See Exhibits 6 through 11 attached to Affidavit of Counsel, 3/1/06.*

It is assumed that Ms. Heilig is incapable of being deposed if she is truly on family medical leave and under that legally protected health status.  Why would Plaintiff move to compel a deposition of Ms. Heilig while she is on family medical leave?  This would be discourteous and likely unsuccessful.  It is circular logic for Safeway to argue at Page 3 of the opposition brief that "Counsel for Safeway also telephonically informed plaintiff's counsel that Heilig was on family medical leave, and obtained from plaintiff's counsel agreement to wait until Heilig had returned from leave until plaintiff deposed Heilig."  It is not that Plaintiff likes waiting to depose Ms. Heilig, but rather that a genuine family medical leave delays it if taken as true.

As a corollary, Plaintiff Denise Gillen should not rush into destructive testing with a person yet unjoined as a formal party, regardless of whether Ms. Heilig is newly and jointly represented by DELANEY WILES.  Instead, Safeway wants to fault Plaintiff for declining to engage in destructive blood testing (supposedly upon consent of Ms. Heilig per new joint

defense representation) while Safeway reserves all of its arguments about severing out claims and actions against Ms. Heilig as unnecessary, dispensable, etc.

At a "grass roots level," Plaintiff Denise Gillen has fought hard and long to get accurate pharmacy records, which Safeway apparently believes is too important to Denise Gillen and too obsessive on her part. Safeway argues at Page 8 of its opposition brief, ". . . [P]laintiff already has the records Safeway possesses regarding the medications dispensed to plaintiff."

However, when Safeway tardily answered Interrogatory Number 9 in mid-January of 2006 (the interrogatory itself being served in September of 2005), the answer was insightful to the systemic problem within Safeway's computerized pharmacy record-keeping system once an error has already occurred for dispensation of medications. The same wrong dispensation record is generated again and again out of Safeway's pharmacy system, in response to records release forms from Plaintiff and health providers, even as recently as in October of 2005. Amazingly, Safeway is content to leave its pharmacy program this way. As to the erroneous dispensation records, Safeway answered about its system-wide flaw as below:

> Interrogatory No. 9:
> Explain precisely why the Carrs pharmacy medical expense print-out, run as of 9/28/04 and attached as Exhibit 1 to Denise Gillen's Complaint, does **not** list or disclose Ambien as filled for or dispensed to Denise Gillen for the period of September 16 or 17, 2004.
>
> Answer to Interrogatory No. 9:
> "Objection not relevant nor reasonably calculated to lead to the discovery of admissible evidence. **Without waiving the foregoing the computer program used to record medication filled only permits input of medication that has been prescribed, and the program cannot be manually overridden or changed.**"

**_[emphasis supplied]_** *Safeway's Answers to Interrogatory Number 9, January 2006.*

Plaintiff wants correct dispensation records available to whoever may need them.

**C. ARGUMENT:**

This portion of the reply brief follows in sequence, and corresponds in headings, to Safeway's arguments at Pages 5 through 34 of the opposition brief.

In overview, Plaintiff will not repeat arguments that she presently previously in her January 4, 2006 Reply on Plaintiff Denise Gillen's Motion to Amend Complaint. Plaintiff Denise Gillen has already fully discussed her point of view under 28 U.S.C. Section 1447(e). The United States District Court's January 12, 2006 Order involved extensive analysis of 28 U.S.C. Section 1447(e) as impacting amendment.

This reply brief will meet the substance of "new arguments" raised in Safeway's February 21, 2006 opposition filing.

The gist or "real rub" here appears to be Safeway's argument that under Federal Rule of Civil Procedure 19(a)&(b) Teresa Heilig, the pharmacist identified for the first time in mid-January of 2006 as creating the medication error, is not an indispensable party. This defense refrain is echoed again and again throughout the opposition brief.

**I.      This court should grant Plaintiff's tandem motions for amendment and remand because Teresa Heilig is necessary and indispensable under Fed.R.Civ.P.19.  See arguments at Pages 5 though 9 of Opposition.**

Under Rule 19, Fed. R. Civ. P., Teresa Heilig, presumably a Palmer resident, is needed for just adjudication. In her absence or by way of splitting her off to state court, Plaintiff Denise Gillen would be impaired from formalized destructive blood testing, including the evidentiary value of uniting all interested parties in testing of a finite sample within a single case. Nor can records correction be done without it being done by a pharmacist with personal knowledge. Plaintiff Denise Gillen does not want to be subject to the substantial risk of incurring double, multiple, or otherwise inconstant obligations in state versus federal court. Plaintiff cannot afford

to split actions and call witnesses, including experts, twice or to prepare for trial twice.

Rule 18(b), Fed.R.Civ.P., contemplates an action such as the one here; i.e., Denise Gillen wants to hold Safeway for money damages for breaches of contract and tort duties due to physically dispensing the wrong medication while, as an adjunct to prosecution of that first set of claims, she is joining in the same single action her claim for records correction, too. This is in accord with joinder of as many claims, legal, equitable, or maritime, as Plaintiff may have against Safeway and/or the pharmacist. Records correction is a claim only cognizable after the claims of duty violations have been prosecuted to a conclusion.

A defense admission that there occurred a medication error does not somehow operate as an "end run" around the adjunct duty to maintain correct records or to correct erroneous records.

This is not a matter of fraudulent joinder. Plaintiff has been consistent on her request for corrective records at every pre-litigation and then after-filing stage. This is not fraudulent joinder. Nor is it governed by the strict interpretation of Fed.R.Civ.P. 19 advocated by Safeway.

Although the district court upon motion for post-removal diversity-destroying joinder considers whether the party sought to be joined would meet the standard for being a "necessary party" under federal joinder rules, the motion is still decided on a less restrictive standard than for joinder of necessary parties. The standard for permitting post-removal joinder is met when failure to join will lead to separate and redundant actions, but it is not met when the defendant sought to be joined is only tangentially related to the cause of the action or would not prevent complete relief. *Boon v. Allstate Ins. Co., 229 F. Supp.2d 1016 (C.D. Cal. 2002).*

The pharmacist who inserted the wrong medication in the bottle, and who made and maintained erroneous dispensation records about it, is neither tangential nor lacking in logical nexus to this case. Denise Gillen cannot be afforded complete relief in the absence of

amendment.

A motion for remand should be denied only if the court is convinced that there is no possibility that a plaintiff can establish **any** cause of action against a resident defendant. *Davis Ex Rel. Estate of Davis v. General Motors, 353 F.Supp.2d 1203 (M.D. Ala. 2005).*

**II.**    **The motions should be granted because Plaintiff can state a claim against Teresa Heilig for specific performance consisting of correction of records, meaning something of declaratory and equitable relief having nothing to do with a private direct civil cause of action for money damages arising out of incorrect records.**

**A.**    **Plaintiff is not even trying to imply a civil money action for violation of pharmacy regulations on record-keeping.**

The bottom line is that Plaintiff is <u>not</u> asserting a novel private cause of action against Teresa Heilig <u>for money damages</u> for an alleged violation of a regulatory duty, under Alaska's pharmacy laws, to keep accurate records. Plaintiff is only asserting under state laws a request for specific performance, in the nature of declaratory or equitable relief, finding that the records are erroneous as maintained and then requiring the pharmacist to do whatever it takes to correct the pharmacy records now and in the future on medications actually dispensed to Plaintiff Denise Gillen. Having said this, Plaintiff is waiting under additional pending written discovery requests and United States DEA administrative channels for copies of whatever federally required controlled substance log records may or may not exist within Safeway on the Ambien dispensed to her. She may or may not later seek separate or additional remedies once she sees Safeway's DEA records on Ambien as a federally controlled substance.

Defendant Safeway is operating under the apparent misassumption that Plaintiff Denise Gillen is trying to assert an independent, private and direct cause of action in tort, whether against Safeway or the pharmacist (or both), for money damages related to records-keeping

violations under state administrative codes.  Actually, this is not the nature of Plaintiff's requested relief.  Plaintiff is not asserting a private tort cause of action arising out of the bad record-keeping.  Plaintiff wants correction of the records, something capable of specific performance regardless of money.  Safeway has never appreciated how frustrating it was and is for Plaintiff Denise Gillen to repeatedly seek accurate records and, then giving release forms, get wrong records from the pharmacy.  While Safeway diminishes the value of this claim, it remains a "very big deal" to Plaintiff.  When ignored, it became one of a few driving forces that put Plaintiff into litigation when she could not get "right" records by other channels.  Plaintiff Denise Gillen asked for corrected records before she sued out the case.

Taking it as given on both sides at this point that Safeway's pharmacy records are flawed, Plaintiff Denise Gillen is just trying to get corrected records.  She wants the records to "say the right thing," meaning what really happened in September of 2004.  This is a request for specific performance or something in the nature of declaratory and/or equitable relief.  It is not a claim for money damages based on record-keeping errors under 12 AAC 52.010 through 52.995 as dismissively categorized by Safeway at Pages 11 and 24 of the opposition brief.  While it is obvious that Safeway assigns a different litigation worth to a "mere record-keeping correction request," that does not diminish its importance to the wronged patient.  When records are wrong on a continuing basis, there should be a judicial mechanism whereby a low-income patient-victim of a medication error can get "to the bottom of it" and get this done, regardless that she seeks no money damages on a novel theory under state records laws.

Denise Gillen hired counsel on a contingent basis for recovery of damages related to the malpractice itself, specifically legal damages caused by the physical and professional error of mis-dispensation of a sleep aid medication as a substantial factor in bringing about an accident

and public DUI arrest/prosecution.  The medication error could have occurred, and indeed did occur in this instance; without respect to anything the records said one way or the other at that past time, now, or in the future.

The record-keeping aspect, as it is raised under state law in the Complaint, is only in the form of recitation of the factual history in the body of the complaint.  See Paragraphs 17 and 18, Plaintiff's [state court] Complaint, September 2005.

For clarity, the only form of relief sought under state records-keeping laws at Pages 8 through 9 of the September 2005 Complaint was for correction and not for money damages. Denise Gillen seeks an order requiring correction of the records.   The only money damages she claims relate to the negligence and breach of contract theories for when the medication error occurred at the pharmacy.

Nor could Denise Gillen afford to pursue records correction in state court as a separate equitable cause of action standing alone.  Correcting the records, by itself, would be non-fee generating from a contingent representation perspective.   Denise Gillen, a stay-at-home housewife, cannot afford to pay the Law Offices of Kenneth J. Goldman, P.C. to pursue records correction, standing alone, on a basis of hourly attorney fees.  Unless "bundled" into the overall lawsuit on money damages for the pharmacy malpractice, Denise Gillen, a low-income layperson, would have no realistic way to afford to seek non-fee-generating judicial review and correction of the patient records.  Yet, to fail to ask for records correction while already in court litigating the underlying medication error would be the same as to leave a "loose string" dangling on what should ultimately be the outcome of this case.   Denise Gillen would have vastly preferred that Safeway and its pharmacist(s) had "ponied up" on records correction before she ever filed this lawsuit and while she was clearly asking for such correction outside of court.

Remand of removed cases is favored when federal jurisdiction is not absolutely clear. *Bevels v. American States Ins. Co., 100 F.Supp.2d 1309 (M.D. Ala. 2000); Town of Gordon v. Great American Ins. Co, 331 F.Supp.2d (M.D. Ala. 2004).*

For clarity then, the only portion of the "Claim for Relief," as contained in Plaintiff's original state court complaint and subsequently amended federal versions, as it pertains to record-keeping is as following, "Corrective compilation and release of full and candid patient records compliant with HIPPA, DEA, and/or insurance standards." *Plaintiff's [state court] Complaint, September of 2005, pp. 8-9 (itemizing "Prayer for Relief").*

B. <u>IT IS NON-SENSICAL TO ARGUE THAT THE PHARMACY REGULATIONS DO NOT ESTALBISH HEILIG BREACHED ANY OF THEIR REQUIREMENTS.</u>

This is not a summary judgment stage. This is only about amendment of the Complaint and remand. Therefore, it is not necessary to try the case in full right now, or anything close to it, to decide one way or the other as factual and legal matters whether Teresa Heilig indeed and truly breached the State of Alaska Pharmacy Board's regulations and interpretive laws on record-keeping. The only issue that matters in reply to Pages 14 through 23 of the opposition brief is that Plaintiff Denise Gillen has a valid claim.

If Denise Gillen is seeking records correction (and she is!), then it would be impossible to exclude the pharmacist from joinder since it is the licensed pharmacist, not the amorphous corporate body, that must make the corrections reflecting what happened on medications in September of 2004. This is common sense. **Logically, if the pharmacist is "not indispensable" (and thus left unjoined by Safeway's desire) in this case, then exactly who could or would make the corrections when a potential court order requires correction? It is not as if Safeway's CEO or other corporate agents, likely non-pharmacists who were**

**working somewhere else on the fateful day in 2004, have any personal knowledge of the drug in fact dispensed out across the pharmacy counter.**

It is only the individual pharmacy licensee who is responsible for filling the prescription drug order and who can be made to correct the erroneous or misleading pharmacy records. *See 12 Alaska Administrative Code Section 52.210 (prescribing "Pharmacist duties" and quoted at Page 16 of Safeway's February 21, 2006 opposition brief); See Amber Rock Pharmacy, Inc. v. Axelrod, 490 N.Y.S.2d 783 (A.D.2Dept.1985)(finding supervising pharmacist had duty to make sure adequate records were kept).*

Here, Plaintiff is saddened by what appears to be a rather uncaring pharmacy approach to its patient at Page 16 of the opposition brief, Safeway therein arguing as below:

> Moreover, this regulatory provision does not establish that any individual Safeway pharmacist violated any regulatory duty by producing a drug dispensation record stating the name of the drug the pharmacist attempted to dispense, rather than the drug erroneously dispensed.

*Defendant Safeway's Opposition to Motion for Second Amendment of Complaint, 2/21/06, Page 16.*

Again, this is not a summary judgment stage that the United States District Court must find a violation, or not, of any regulatory duty incumbent upon Safeway and its pharmacist. This is a liberal and discretionary amendment stage only. Still, the attitude of Safeway comes through pretty clearly. Safeway thinks it is "okay" at Page 16, or at least not a violation of the spirit of state records-keeping regulations, to keep publishing a "dispensation record" for Denise Gillen for September of 2004 showing Ultracet instead of Ambien. This error continues, such as in the record attached to the Complaint and such as in the dispensation record for October of 2005 attached as Exhibit 9 to Plaintiff's January 4, 2006 Reply brief.

### III. THE COURT SHOULD GRANT PLAINTIFF'S MOTIONS BECAUSE

**JOINDER AND REMAND ARE APPROPRIATE UNDER FACTORS ESTABLISHED BY CASE LAW.  EVEN SO, SAFEWAY'S ARGUMENTS AT PAGES 24 THROUGH 33 OF THE FEBRUARY 21, 2006 OPPOSITION BRIEF ECHO, AND ARE SOMETIMES EVEN DIRECTLY *VER BATIM*, WHAT IT ALREADY UNSUCCESSFULLY ARGUED IN ITS OPPOSITION TO MOTION TO AMEND COMPLAINT SERVED ON DECEMBER 19, 2005.**

Pages 24 through 33 of the February 21, 2006 opposition brief, related to application of 28 U.S.C. Section 1447(e), are almost identical with what Safeway argued before at Pages 4 through 11 of its December 19, 2005 brief.  Plaintiff already largely dealt with those arguments in her reply brief on "Doe amendment" filed on January 4, 2006.  The court already did a thorough Section 1147(e) analysis of many of the issues or potential issues in the form of its Order Granting Plaintiff's Motion to Amend Complaint filed on January 12, 2006.  The only thing not in possession of Plaintiff or the court on January 12, 2006 which would be new or relevant at bar is the residence/citizenship of the pharmacist.  This last bit of information, so simple and capable of comprehension, is still withheld by Safeway.

The only thing that has changed since January 12, 2006 is that Safeway finally gave the name of the pharmacist, Teresa Heilig, who physically inserted the wrong medication by tardily, but only partially, answering Interrogatory Number 1 (such interrogatory served out before federal removal).  **What has not changed in that short time is that Safeway remained and still remains cleverly silent about telling the residential address of the pharmacist, Teresa Heilig**, even when obviously pressed to do so by Plaintiff and the United States District Court.  Plaintiff assumes in the face of Safeway's conspicuous silence at this point that Teresa Heilig lived and still lives in Palmer, Alaska, thereby putting her within a couple of miles or less of the Palmer Carrs/Safeway Pharmacy (where it all happened) and the Palmer Courthouse.

Only new arguments will be addressed here if and when Safeway presents them in its

February, 2006 opposition brief distinct from the December 19, 2005 filing.

A. **The Honorable Ralph B. Beistline already found in January of 2006 that Plaintiff "Gillen's purpose in amending the Complaint was or is not to avoid federal jurisdiction." Safeway ignores this finding when arguing at Page 25 of its February, 2006 opposition that Plaintiff seeks to amend her complaint merely to defeat federal diversity jurisdiction.**

Plaintiff talked about the erring pharmacy employee, and not knowing who the employee was, at Paragraphs 4 and 20 of the original state court complaint. **Plaintiff served an interrogatory with the state complaint seeking to discover the identity of the employee and residential address. Plaintiff did not know that Safeway would federally remove the case or, when doing so, that Safeway would ignore the interrogatory.**

In this regard, the Honorable Ralph B. Beistline already accepted at Page 4 of the Order, filed January 12, 2006, that Plaintiff "Gillen's purpose in amending the Complaint was or is not to avoid federal jurisdiction." The Order specifically discussed the interrogatory.

Defendant Safeway argues at Pages 7, 23, 27, and 29 of its February, 2006 opposition, without any citation to supporting legal authority, that all of the relief that Plaintiff Denise Gillen wants or ever could want can be had against Safeway, the employer, on a *respondeat superiore* theory without joinder of the pharmacist. Setting aside the records correction issue for the moment, Plaintiff would say it is not up to Safeway to choose and limit for Plaintiff who she can sue among the erring and potentially liable multiple parties. **It is reasonable when choosing defendants to sue the pharmacist who put the wrong medicine into the bottle.**

There are other thoughts as well. For example, the personal/individual errors and omissions ("E&O"), excess, and/or umbrella carriers for the pharmacist may be different than Safeway's self-insurance. The length and scope of party-deponent discovery may vary as to the pharmacist when compared to discovery otherwise available involving the same pharmacist but

where she might be situated only in a more limited non-party/witness role. Nor is it clear that the pharmacist is an employee versus an independent contractor, and, if the latter (a contractor), what sorts of duties are imposed in the contract between Safeway and the pharmacist in addition or supplemental to those under state and/or federal laws. All of this has nothing to do with whether Teresa Heilig was acting, or not, within the course of her job when filling medications as argued at Pages 27 through 28 of the opposition brief.

In sum, as far as Plaintiff's counsel is aware in this context, there is no law in Alaska prohibiting Plaintiff from suing the employee when she sues the employer or vice-versa.

Incidentally, language at Pages 27 and 28 of the February, 2006 opposition might give the misleading impression that Safeway never wanted blood testing. Actually, it was Safeway that drafted and forwarded a proposed stipulation for destructive testing, naturally without answering the outstanding interrogatory to identify the name and address of the erring pharmacist. While Plaintiff only wants Ambien tested, Safeway has a thirst for greater testing, insisting on "re-running" all of the tests already done by the States of Alaska and Washington, although Plaintiff is perplexed as to the need for repeated testing of what has already been done.

### III.    THIS COURT SHOULD GRANT PLAINTIFF'S MOTION FOR AMENDMENT OF COMPLAINT AND REMAND BECAUSE PLAINTIFF CAN STATE CAUSES OF ACTION AGAINST TERESA HEILIG.

Again, this is an amendment and remand stage. The United States District Court is not required to try or summarily dispose of the facts and laws in full here. As argued above, Plaintiff Denise Gillen is not attaching any request for monetary damages under state law on "bad pharmacy records." The only tort and contract actions asserted by Plaintiff relate to the medication error in dispensation of the wrong drug, Ambien, and this could have happened (did

happen) regardless of what was put in the records or corrected thereafter. Thus, the United States District Court does not need to decide here whether there is a private, direct, civil action in tort for money damages related to a state regulatory violation on records-keeping alone. Plaintiff discerns that Safeway "just doesn't get it."

Safeway contradicts itself as well. For example, at page 34 of the opposition brief filed February 21, 2006, Safeway argues alternatively that "even if she did have such private cause of action, the regulations themselves establish no duty by a pharmacist that applies to the facts here. There is simply no regulation covering the situation of a mis-fill. Instead the regulations only speak to drugs that are actually prescribed by a physician."

It is hard to believe that the State of Alaska's pharmacy board and its promulgated regulations never intended pharmacists to correct their records to show when they have committed an error. This sort of claim or defense should be estopped, as sort of an "unclean hands" approach, in the first place. It is a sick argument calloused to patients' rights.

Even so, if Safeway authentically believes that it has no duty under state pharmacy board regulations to correct the dispensation records for Denise Gillen knowing and admitting what it does now on the error, then Safeway should not in the same breath argue, at Page 15 of the opposition brief, that the board is the one with power to regulate pharmacy practice as applicable here. Assuming, *arguendo*, that the regulations convey no duty to Safeway for correction, then the pharmacy board cannot by Safeway's own circular logic be an adequate and exclusive remedial body for the particular relief sought by Denise Gillen in this case. In other words, if there really is no corrective record-keeping duty per the state board, then Safeway should not in tandem with that argument try telling Denise Gillen to go to the board for her equitable relief.

**D.  CONCLUSION:**

While Safeway spends a great amount of its brief attempting to discount Plaintiff's record-correction claim, the corporate chain ignores that Plaintiff may join either or both of Safeway and Teresa Heilig in claims for money/legal damages arising out of the act of the medication error itself under available tort and contract theories.  Plaintiff wants no money damages under state laws, just declaratory and equitable relief for correction, as to the records errors.  Plaintiff awaits DEA control logs on Ambien as a controlled substance.

Most importantly, and Plaintiff is sincerely perplexed by this, Safeway knows that everybody in this case is asking for the residential address of the pharmacist, Teresa Heilig, so as to evaluate whether she is local or not.  Safeway cagily withholds the residential address, while fighting so hard against amendment and remand that Plaintiff can only assume confirmation that Ms. Heilig is local.

Plaintiff satisfies the factors falling under 28 U.S.C. 1447(e) on post-removal joinder of a diversity-destroying party.  Plaintiff seeks joinder of the employee for whom she has waited months to receive identification.  Plaintiff investigated a local Palmer address when Safeway did not provide an address for the pharmacist.  Plaintiff filed both the first and second amendment motions because there are or could be valid claims.  Joinder preserves Plaintiff's rights.  Plaintiff moved for first amendment in a timely fashion before expiration of the corresponding pre-trial deadline.  Plaintiff moved for the second amendment immediately upon receipt of the name of Teresa Heilig as the erring pharmacist in incomplete answer to Interrogatory Number 1 (answer received mid-January, 2006 without any address).  Plaintiff would be prejudiced in testing, evidence, cost, and attorney representation if her claims against the local pharmacist are redundantly split off into state court.  There is not enough blood to divide it up for destructive

testing between multiple forums.  As a balance of equities, the only prejudice that Safeway would suffer in amendment is the remand of the case to state court, away from Safeway's preferred forum.  Parallel lawsuits only burden Plaintiff who is the admitted victim.

Plaintiff should be allowed to preserve her rights against the individual pharmacist while litigating all claims in one action with united destructive testing of the finite blood specimen. The claims obviously arise from the same nucleus of facts and laws.

Once a decision is made to allow joinder, then remand is the necessary outcome.  *See Yniques v. Cabral, 985 F.2d 1031 (9th Cir. 1993)(requiring district court to remand action to state court once district court exercises option joining diversity-destroying party)(disapproved on other grounds by McDowell v. Calderon, 197 F.3d 1253 (9th Cir. 1999).*

When confronted with amendment to add a nondiverse nonindispensable party in a federal diversity action, the district court should use its discretion in deciding whether to allow that party to be added.  If the court grants joinder, then it must remand the case to state court. *Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987).*

Dated this 2nd day of March 2006 in Palmer, Alaska.


/s/ Elizabeth N. Smith
Attorney for Plaintiff Denise Gillen
Alaska Bar No. 9402003


**Certificate of Service**
I certify that on the 2nd day of March, 2006, the
foregoing was electronically served on:
Cynthia Ducey
Attorney for Safeway
1001 West 3rd Avenue Ste 400
Anchorage, AK 99501-1936
 /s/ Elizabeth N. Smith