Elizabeth N. Smith
Attorney for Plaintiff
Law Offices of Kenneth J. Goldman, P.C.
550 S. Alaska Street Ste 4-5
Palmer, AK  99645
Phone:  (907) 746-2346  Fax (907) 746-2340
Email:  ofcmgr@pobox.mtaonline.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DENISE FAYE GILLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAFEWAY, INC. and TERESA HEILIG, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) Case No. A05-0234CV (TMB) |

**SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff Denise Gillen, by and through the Law Offices of Kenneth Goldman, P.C., and for her claim against Defendants, states and alleges as following:

1) Plaintiff Denise Gillen (DOB 1/25/58) was and is a resident of the State of Alaska, Third Judicial District at Palmer.  Plaintiff maintained and maintains at all relevant times a residence in Palmer, Alaska.  Plaintiff is fully qualified to bring and maintain this action.

2) Defendant Safeway, Inc., d/b/a Carrs Pharmacy Number 27-1814, Pioneer Square – Palmer, and also d/b/a Carrs Quality Center, A Safeway Company, and also Carr-

Gottstein Foods Co., a subsidiary of Safeway, Inc., did and does business at all relevant times under these names in the State of Alaska, Third Judicial District at Palmer. The events that are involved in this case revolve around dispensation of an incorrect and impairing prescription medication at Carrs Pharmacy, Pioneer Square #14, 535 W. Evergreen Street, Palmer, Alaska 99645. The events include, but are not limited to, pharmacy malpractice, resultant impaired driving of Plaintiff Denise Gillen, impaired and accidental collision while so driving, and subsequent public arrest of and dismissed criminal prosecution against Plaintiff related to such impaired driving. All events occurred in the Mat-Su Valley and well within the judicial boundaries of the Third Judicial District at Palmer.

3) Defendant Safeway, Inc.'s registered agent for service of process, as posted on August 30, 2005 according to the State of Alaska Department of Commerce's website and telephone calls with related corporation/licensing examiners, is US Corporation Company, 801 W. 10th Street, Suite 300, Juneau, Alaska 99801. US Corporation Company is affiliated with but separate from CSC Corporation.

4) Defendants had a duty to carefully fill and dispense correct prescription medication for or to Plaintiff. Defendants admit that they breached this duty by mis-filling the proper prescription with an incorrect drug and then dispensing or delivering the incorrect drug to Plaintiff on Friday, September 17, 2004. On September 20, 2004, Defendant Teresa Heilig of Carrs Palmer Pharmacy orally alerted Plaintiff's medical provider or providers as to the error that was made in medications.

5) In particular, on or about Friday, September 17, 2004, Defendants negligently dispensed to Plaintiff a medication called "Ambien" in place of "Ultracet" which was

or should have been prescribed by Plaintiff's health provider on September 16, 2004. Ambien's generic name is Zolpidem Tartrate, and it is used for the treatment of insomnia. Ambien is a sleep aid medication requiring close monitoring by a doctor. In layperson description, Ambien affects brain chemicals and works to induce sleep and relaxation. Ambien is an extremely fast-acting drug. It is in the class of drugs related to sedatives, hypnotics, and sleep medications. An identified side effect is amnesia or memory loss after a dosage. Specifically, the Ambien mis-dispensed to Plaintiff was not a low-level dosage, for example only 5mg as had previously months or years before been sampled on a limited basis by Plaintiff without incident before bedtime, but rather the mis-dispensed Ambien in September of Year 2004 was thought to be a higher level 10mg dosage which she would, if she had known, never have taken while driving or taking care of children.

6) Conversely, in layperson terms, Ultracet, the drug that was prescribed but not filled and dispensed, is generically known as Tramadol Acetaminophen, a non-narcotic form for pain relief. Ultracet can be used in combination with cautiously driving and operating machinery or vehicles once it is known how a consumer or patient will react to the medicine.

7) Ambien was dispensed to Plaintiff Denise Gillen in a bottle bearing a label for "Ultracet."

8) Plaintiff Denise Gillen trusted that the medication dispensed to her by Defendants was correct and accurate. Plaintiff simply took the medication while or before driving to pick-up her young grandchildren. As well as Plaintiff can reconstruct events of that day when and after she picked up the mis-filled prescription at

Defendants' pharmacy, Plaintiff thinks (but is not certain) that she took one of the tablets or pills while driving around 11:00am in the morning on September 17, 2005. Afterwards, she stopped at a relative's workplace to pick up child car seats, and this remains one of her last and few memories of events until a collision occurred and she was arrested by law enforcement (as detailed below). Plaintiff's best memory is only taking the erroneous drug once or initially while she was already operating her vehicle. However, Plaintiff shortly thereafter remembers little or nothing. It is possible that, once impaired, Plaintiff took even more of the medication, although she remembers nothing of it and cannot confirm the possibility. The bottle was eventually retrieved with less than full contents.

9) In light of Plaintiff's medical history and other factual background, Plaintiff did not know after taking the medication, which she innocently but wrongly believed to be Ultracet that she would be or was driving in an extremely impaired manner.

10) In particular, Plaintiff was under the influence of the mis-dispensed medication while driving her red Honda SUV, Alaska License Plate Number DPZ324, in daylight and on dry roads on September 17, 2004. An independent eyewitness noticed Plaintiff driving her vehicle on the wrong side of the road, swerving across the road, driving at irregular speeds and in disobedience of traffic signs and devices, and otherwise driving as if "drunk." The eyewitness called the police from his cellular phone and then followed Plaintiff while she continued to operate her vehicle in such manner along public roadways. The eyewitness was still following Plaintiff so as to observe her "crash" into another vehicle, an unidentified red-colored 2002 Chevy pickup truck, at a low speed at a four-way intersection.

11) To date, Plaintiff and her counsel have not been able to identify the owner or occupant(s) of the red-colored 2002 Chevrolet pick-up truck into which Plaintiff collided while impaired by the medication. It was a mild collision at most. Under best knowledge, no person or persons owning or riding in such pick-up truck have stepped forward to identify themselves to police and/or to Plaintiff and her counsel. It was reported by at least one source that with permission of the Wasilla Police Department the red-colored truck was allowed to leave the scene before Alaska State Troopers arrived there, thus preventing collection of necessary vehicle information by the Alaska State Troopers. It is unknown if anyone in or related to the red-colored 2002 Chevrolet pick-up truck is claiming or may ever claim damages against Plaintiff, although Plaintiff hopes that there never arise any such civil claims. It is thought upon best information that the red-colored 2002 Chevrolet pick-up truck left the scene because there was no damage to it, but this cannot be verified presently. To the extent that such third party or third parties, together with any unjoined and unidentified claims, may result in future litigation, Plaintiff desires to be held harmless and to be defended, indemnified and reimbursed by Defendant.

12) Plaintiff suffered mild property damage to her vehicle as a result of the collision. Plaintiff's limited memory of the events is that she was physically wandering around the collision scene picking up pieces of debris off the roadway, but she cannot identify from which vehicle or vehicles the debris came at the scene.

13) Fortunately for Plaintiff's safety and for public safety, Plaintiff Denise Gillen was arrested when police arrived at about 1225 Hours on September 17, 2004 at the scene of the above-described collision, at Lakeview Drive & Seldon in Wasilla. Witnesses

described that it was lucky nobody was killed that day. Plaintiff has little or virtually no memory of the accident, except flashbacks of gathering debris off the roadway while trying to persuade police officers that she was not "drunk" as they were suggesting to her.

14) In police reports and other related materials, Plaintiff was described as having "none" as an odor of alcohol, although she was also described as being carefree and cooperative, slurred in speech, wobbly, non-tracking eyes, swaying, staggering, and failing of all field balance and sobriety tests. Indeed, the PBT result for alcohol was .000. Subsequent tests on urine and blood confirmed the lack of alcohol and controlled substances in Plaintiff's system (except for Ambien).

15) Nonetheless, Plaintiff Denise Gillen was arrested, transported for testing for alcohol and/or controlled substances, and confined in jail (MatSu Pretrial Facility) without medical assistance. Plaintiff has little or virtually no memory of events after the arrest, except flashbacks, among other random memories, of being hand-cuffed, being fingerprinted, being briefly at or in the hospital, and then, finally, abruptly and more clearly "waking up" terrified to find herself locked in a jail cell. Plaintiff was unable to explain to law enforcement or to her family what had happened, or to understand what they were telling her, when calling for help once finally "awake" in the jail cell.

16) After Plaintiff was bailed out of jail, investigation was made, and Defendants soon admitted that they had indeed mis-filled medications. Defendants do not presently deny that there was a pharmacy error in dispensing a controlled and/or impairing substance to Plaintiff in place of her correct prescription on the day of these events. Plaintiff has retained possession of the erroneous pharmacy bottle and remaining

contents. Plaintiff supplied photographs of the bottle and the remaining pills to Defendant Safeway, Inc. and its adjusters.

17) Specifically, Plaintiff and her counsel, the Law Offices of Kenneth J. Goldman, have encountered difficulties in attempts to release full and accurate pharmacy, DEA, and insurance records in the possession of or accessible to Defendants. If Defendants ever conducted records corrections within its own system, or within or sent to overlapping DEA and insurance authorities, then Plaintiff has not received copies of those records despite multiple written requests for same.

18) For example, in response to proper records release requests, Defendant Safeway, Inc. supplied or was willing to supply records on the September 17, 2004 error only in the form of the attached one-page summary, Exhibit 1 hereto, for medications supposedly provided to Plaintiff for the period of January of 2004 through September 20, 2004. The run date on such Exhibit 1 summary was December 16, 2004, meaning no correction still had been or yet was made to patient records and/or expense records to candidly reflect the error. The record lists "Ultracet," and says nothing about "Ambien," in September of 2004, nor does it reflect any attempt to correct the record for known error, all despite Defendants' immediate awareness and admission that it filled the wrong drug.

19) Included as Exhibit 2 hereto is a subsequent or sequential pharmacy prescription record for Ultracet that was correctly filled by Defendants on September 20, 2004, along with a refund made to Plaintiff and/or her insurer of $21.21 for the price of the previously and incorrectly dispensed Ambien. Attempts by Plaintiff and her counsel to obtain other records have been rejected by Defendant Safeway, Inc.

20) Upon information and belief, the past or current employment status is unknown to Plaintiff regarding the pharmacy employee who bypassed what was believed to be a four-step protocol for checking accuracy of prescriptions. The name of the female employee was at first unknown to Plaintiff and her counsel, until finally identified in written discovery from Defendant Safeway, Inc. dated January 16, 2006. Such pharmacy licensee was identified by Defendant Safeway, Inc. on January 16, 2006 as Teresa Heilig, made defendant hereto. Defendant Teresa Heilig is and was at all relevant times a resident of Palmer, Alaska. Upon best information and belief, Defendant Teresa Heilig's residential address as of the filing of the initial complaint at the Palmer Courthouse was 755 W. Fern Avenue, Palmer, Alaska 99645. She is not diverse in citizenship from Plaintiff Denise Gillen.

21) Plaintiff Denise Gillen suffered criminal prosecution as a result of the above sequence of events, specifically charges for Driving While Under the Influence, AS 28.35.030(a), as set forth in *State of Alaska v. Denise Gillen, Case No. 3PA-SO4-2814CR*.

22) Upon investigation of the pharmacy error leading to Plaintiff's impaired driving, the State of Alaska agreed to voluntarily dismiss the charge(s) on November 16, 2004. In the meantime, Plaintiff suffered arrest, confinement in jail without medical assistance, intense fear "waking up" in jail as the prescription drug wore off, attorneys fees defending such criminal prosecution, emotional distress, reputation loss, and public humiliation.

23) People known to Plaintiff saw her in handcuffs and/or saw her name in the arrest column of the local newspaper.

24) Defendant Teresa Heilig, recently identified in discovery responses by or from Defendant Safeway, Inc., is substituted as a named party in place of hypothetically joined "John Doe and/or Jane Doe." Said individual party is that pharmacy agent and/or license/control number holder who physically inserted or who oversaw the physical insertion of the incorrect medication, Ambien as a substance, on the dates in question.

25) Plaintiff Denise Gillen was damaged by Defendants' breaches of contract and/or negligent breaches of duties of care.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as following:

1) General, compensatory and special damages equal to or in excess of the jurisdictional limit for Superior Court, specifically an amount equal to or in excess of $120,000;

2) Corrective compilation and release of full and candid patient records compliant with HIPPA, DEA, and/or insurance standards;

3) Interest, costs, disbursements and attorney fees, including, but not limited to, such pre-judgment interest as may be appropriate pursuant to any notice preserved under AS 09.30.070(b); and

4) Such other relief as the court deems just and equitable.

DATED this 23rd day of March 2006 at Palmer, Alaska.

/s/ Elizabeth N. Smith
Attorney for Plaintiff
ABA No. 9402003

**Certificate of Service**
I certify that on 3/23/06 the
Second Amended Complaint was
served electronically on Cynthia Ducey
attorney for Defendant Safeway and mailed
via certified mail to Teresa Heilig
/s/ Elizabeth N. Smith